**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2011-NMCA-120

Filing Date: October 27, 2011

Docket No. 30,000

STATE OF NEW MEXICO,

       **Plaintiff-Appellee,**

v.

CARLOS GOMEZ,

       **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Charles W. Brown, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

McGarry Law Office
Kathleen McGarry
Glorieta, NM

for Appellant

## OPINION

**VIGIL, Judge.**

{1}    Carlos Gomez entered into three separate plea agreements. In each, the State agreed that the total time Gomez could serve would be zero to nine years of incarceration, supervised probation, or treatment, or a combination thereof. It was also agreed that the sentences would be served concurrently with each other. The district court accepted the agreements but misconstrued the plea agreements to permit a sentence of twenty-one years in prison, with sixteen years suspended, for an actual prison term of five years, plus five

1

years of supervised probation. We reverse and remand for entry of a judgment and sentence that conforms to the plea agreements.

**BACKGROUND**

{2}     Over the course of several months in 2007 and 2008 Gomez was charged in six different cases with nineteen criminal offenses. The offenses included possession of marijuana, methamphetamine, and cocaine, trafficking in cocaine, trafficking in heroin, tampering with evidence, bringing contraband into a jail, receiving stolen property, and several motor vehicle violations, among others. Gomez entered into three plea agreements with the State to resolve all six cases.

{3}     The first plea agreement was presented to Judge Brown in September 2008 and resolved three of the six cases. Gomez agreed to plead guilty to the crimes charged in one of the three separate indictments. These were: trafficking cocaine, possession of methamphetamine, and receiving stolen property. In addition, Gomez agreed he was a habitual offender. In exchange, the State agreed to dismiss all the remaining charges contained in the indictments and not to file habitual offender proceedings. In the sentencing agreement, the parties agreed "that [Gomez] will serve zero (0) to nine (9) years of incarceration or supervised probation, program or combination of the both."

{4}     At the guilty plea hearing, Judge Brown clarified that the sentencing agreement was that the sentences were to be served concurrently with each other. Judge Brown then advised Gomez, "[I]f you have the nine years, that's the maximum because everything else is smaller than that." At the conclusion of the hearing, Judge Brown formally approved the plea agreement. Judge Brown ordered a presentence report and set a sentencing hearing for a later date.

{5}     The second plea agreement was presented to Judge Sheppard in January 2009 and resolved the fourth case. Gomez agreed to plead guilty to one count of trafficking cocaine and again admitted he is a habitual offender. The State again agreed to dismiss the remaining charge and not file a habitual offender proceeding. The sentencing agreement was that "[Gomez] will serve zero (0) to nine (9) years of incarceration or supervised probation, treatment program, or a combination of both" and that the sentence would run concurrent with the sentence to be imposed in the first case. At the plea hearing on this case, the prosecutor stated that the parties had agreed that "[Gomez] will serve a period of zero to nine years of incarceration or supervised probation, treatment or a combination of both[.]" Judge Sheppard formally approved the plea agreement. Judge Sheppard noted that a presentence report had been prepared, and he agreed with the parties' request for Judge Brown to impose sentence in both cases.

{6}     The third plea agreement, which resolved the remaining two cases, was presented to Judge Butkus in February 2009. Gomez agreed to plead guilty to two charges of possession of cocaine, and again admitted he is a habitual offender. In exchange, the State again agreed to dismiss or not pursue any remaining charges and to not file a habitual offender proceeding. The sentencing agreement was that "[Gomez] will serve zero (0) to nine (9)

2

years of incarceration, supervised probation, in a treatment program, or some combination thereof" and that the sentence would run concurrent with the sentence to be imposed in the first case and in the second case. At the plea hearing, the prosecutor advised the court that "[t]he sentencing agreement is that this case is ultimately going to be lumped into a series of other cases that are pending before Judge Brown, as I understand it. The sentence will be zero to nine years of incarceration, supervised probation or a treatment program or some combination of those three." Judge Butkus formally approved the plea agreement, and also agreed to allow Judge Brown to impose sentences in all three cases. All three plea agreements contained an identical provision stating "[i]f the [c]ourt finds the provisions of [the] agreement unacceptable, after reviewing it and any pre-sentence report, the [c]ourt will allow the withdrawal of the plea, and [the] agreement will be void."

{7} The sentencing hearing for all three consolidated cases was held before Judge Brown in February 2009. The parties informed Judge Brown that Gomez had been accepted into an in-patient treatment program in Fort Stanton and that they agreed to Gomez being sentenced to the program with the remainder of the sentence suspended. Defense counsel also noted that the presentence report recommended that Gomez be ordered to drug court and that the entire sentence be suspended. In response to questions from Judge Brown, counsel stated that Gomez preferred the drug court alternative with a deferred sentence. Judge Brown ruled, "I'm going to defer sentencing in this matter." Addressing Gomez, Judge Brown said:

> I'm going to give you the benefit of the doubt here and sentence you. One of your conditions of release while sentencing is pending is to sign up for, enter, and successfully complete the Drug Court program. At your successful completion of that program, you come back, and I will suspend any balance of the time you have. That's the big benefit to it.
>
> The downside is, since I'm not sentencing you today, if you go three years and then you blow it, I still got the full nine years hanging over your head. You don't get the credit while you're pending sentencing.
>
> Here's the deal: If I sentence you and put you on probation for nine years, if you go through Drug Court for three, or whatever, and then you go crazy and start doing drugs and blow it and . . . violate your probation, I can only sentence you to six more years in jail, because you had already served three on probation. But since I'm not sentencing you today, I'm not imposing any sentence. It's just being held out there. And if you go three years or whatever length of time, then you blow it, I've got that full nine years I can still impose.

Orders were entered directing Gomez's release with the condition that Gomez report to, and complete, drug court.

**{8}** However, one month later, drug court reported a violation by Gomez, and a bench warrant was issued for Gomez's arrest. Gomez appeared before Judge Brown in May 2009, a second time for sentencing. Judge Brown announced Gomez would be sentenced to twenty-one years imprisonment, with sixteen years suspended, resulting in an actual term of imprisonment of five years. In addition, Judge Brown said Gomez would be ordered to serve five years of probation upon his release. Gomez filed a motion to modify the sentence to bring it in conformity with the plea agreements. At the hearing on Gomez's motion, Judge Brown refused to reconsider the sentence because he interpreted the plea agreements to permit a sentence of five years of actual incarceration and five years of probation, as each was less than the nine-year cap. Gomez's counsel requested that the judge limit Gomez's post-incarceration probation to four years to comply with the plea agreements rather than leaving open the possibility that Gomez could "keep coming back on probation violations for [twenty-one] years." Judge Brown said that if Gomez wanted to avoid this result, he should not violate probation. The judgment and sentence was filed incorporating Judge Brown's oral sentence. Gomez appeals.

## DISCUSSION

### Standard of Review

**{9}** A plea agreement is a unique form of contract whose terms must be interpreted, understood, and approved by the district court. *State v. Mares*, 119 N.M. 48, 51, 888 P.2d 930, 933 (1994). When there is any ambiguity in a plea agreement and the district court resolves the ambiguity with the parties at the time of the plea, the agreement is no longer ambiguous on that point. *Id.* However, if an ambiguity is not resolved by the district court and no extrinsic evidence is introduced that would resolve it, "the reviewing court may rely on the rules of construction, construing any ambiguity in favor of the defendant." *State v. Fairbanks*, 2004-NMCA-005, ¶ 15, 134 N.M. 783, 82 P.3d 954. Under such circumstances, we review the terms of the plea agreement de novo. *Id.* In reviewing and interpreting plea agreements, our task is to construe their terms according to what a defendant reasonably understood when he entered the plea. *Mares*, 119 N.M. at 51, 888 P.2d at 933; *Fairbanks*, 2004-NMCA-005, ¶ 15 .

### The Agreements Are That Gomez's Sentence Will Not Exceed Nine Years

**{10}** Gomez asserts that the sentence imposed in this case exceeds the terms set by his agreements. We agree. Gomez's plea agreements are unambiguous in stating that the total time he will serve pursuant to each agreement is zero to nine years of some combination of incarceration, supervised probation, or treatment. The agreements are also clear that the zero- to nine-year periods to be served pursuant to the second and third agreements are to be served concurrently with the sentence imposed under the first agreement. Therefore, the sentence requiring Gomez to serve a five-year period of incarceration, followed by a five-year period of supervised probation is not within the terms of the agreements. Nine years

4

of any combination of incarceration, supervised probation, and treatment was the maximum that the district court could order Gomez to serve.

{11}    We reject the State's argument that the use of the term "serve" in the first agreement indicates an intent to allow for an actual sentence of something greater than nine years, so long as any period above the nine-year cap is suspended or deferred.  When a suspended sentence is imposed, the court sentences the defendant and enters an order "suspending in whole or in part the execution of the sentence[.]"  NMSA 1978, § 31-20-3(B) (1985).  Thus, a defendant is ordered to "serve" a period of imprisonment, but actual imprisonment is delayed unless, and until, the court orders otherwise.  *See Mask v. State*, 829 N.E.2d 932, 936 (Ind. 2005) ("A suspended sentence differs from an executed sentence only in that the period of incarceration is delayed unless, and until, a court orders the time served in prison.").  This is reflected in the judgment and sentence actually filed in this case, wherein Judge Brown sentenced Gomez "to the custody of the Corrections Department of the State of New Mexico *to be imprisoned* for the term [of] twenty-one (21) years for the basic sentence."  (Emphasis added.)  Thus, Gomez was clearly ordered by the judgment and sentence to "serve" a prison term greater than nine years.  Suspending execution of sixteen years of actual incarceration unless, and until, Judge Brown orders otherwise, does not change the fact that Gomez was sentenced to a prison term of twenty-one years.

{12}    The twenty-one year sentence of incarceration was not in accordance with the plea agreements, despite the fact that sixteen years were suspended.  In the event that Gomez violates probation, he will be required to serve the full sentence (minus credit for time served on probation), which is clearly in excess of the nine-year cap set forth in the plea agreements.

{13}    The second and third agreements contain a provision that "[a]ny 'cap' or other limitation on incarceration shall be a limitation on imprisonment only at initial sentencing" and state that if Gomez violates probation, the district court may sentence him without considering the limitation.  However, the first agreement does not. Because the basic sentences for the offenses in the second and third agreements were nine and three years, respectively, the district court had no authority to impose a sentence higher than nine years under either the second or third agreements.   The State suggests that this means that the possible nine-year sentence under the second plea agreement and the possible three-year sentence under the third agreement could be run consecutively to each other for a total of twelve years.  The State cites no authority to support this proposition, and where both the second and third agreements state that the sentence in each is to run concurrently with the one imposed under the first agreement, the most reasonable reading is that the sentences imposed under all three agreements will begin to run at the same time—at the time that the sentence in the first agreement begins.  As it is only the first agreement that involves crimes for which the basic sentences totaled more than nine years, we look only at that agreement for any intent that the nine-year cap would be limited to the initial sentencing.

5

**{14}** We conclude that Gomez reasonably understood that the limit on the entire sentence he could potentially be ordered to serve was nine years, in any combination of prison, supervised probation, or treatment program. This understanding was reasonable in light of the plain language of the plea agreements and as a result of the hearing held before the three judges who accepted the plea agreements. Further, a suspended sentence, which allows for the possibility that he could actually serve more than nine years in prison, violates the plea agreements. Construing any ambiguity in the agreements in the light most favorable to Gomez, we come to the same conclusion.

### On Remand, the District Court Must Enforce the Agreements

**{15}** Since Gomez's sentence was not in conformity with the plea agreements, the question is what remedy is appropriate. Gomez does not want to withdraw his plea, and he asserts that he should be permitted to enforce the agreements as written. We agree.

**{16}** New Mexico jurisprudence is clear that when a defendant pleads guilty or no contest in exchange for a specific, guaranteed sentence, he is entitled to specific performance of the plea agreement or be given the opportunity to withdraw the plea. *State v. Pieri*, 2009-NMSC-019, ¶¶ 5, 30, 33, 146 N.M. 155, 207 P.3d 1132. Once the plea is accepted, the court is bound by the dictates of due process to honor the agreement and is barred from imposing a sentence that is outside the parameters set by the plea agreement. *State v. Sisneros*, 98 N.M. 279, 281, 648 P.2d 318, 320 (Ct. App. 1981), *aff'd in part, rev'd in part on other grounds*, 98 N.M. 201, 202, 647 P.2d 403, 404 (1982). Our Supreme Court has expressly recognized that such is the case when a plea agreement contains a maximum incarceration potential after a probation violation, such as the case now before us. In *Mares*, 119 N.M. at 51, 888 P.2d at 933, the Court said:

> [T]he parties should be able to negotiate the terms of a plea agreement to the full extent allowed by law. If the prosecution wishes to offer a maximum potential incarceration provision in exchange for a guilty plea, it should be allowed to do so. The fact that such a plea may prevent the trial court from ordering that a defendant be incarcerated after a probation violation is something that the prosecution must weigh before it decides to offer the plea agreement. When all parties agree, however, that a plea agreement will include a maximum potential incarceration provision that governs both sentencing and post-sentencing procedures, and the trial court approves the agreement, this Court will enforce that provision and require the trial court to suspend the agreed-upon period of incarceration.

*Id.*

**{17}** We do not hesitate to conclude that each district court judge approved the plea agreement presented him. At Gomez's three plea hearings, the judges orally approved the agreements and signed them, indicating that the agreements were accepted. Although each

6

judge postponed sentencing and each agreement provided that "[i]f the [c]ourt finds the provisions of this agreement unacceptable, after reviewing it and any pre-sentence report, the [c]ourt will allow the withdrawal of the plea, and this agreement will be void," no judge stated he intended to reserve his decision to accept or reject the plea until he was able to review the presentence report. Importantly, even after the presentence report was prepared and presented to Judge Brown, he did not reject the plea agreements. In fact, all the indications are that Judge Brown accepted the plea agreements and intended to comply with them. Most telling is Judge Brown's statement at the hearing on Gomez's motion to reconsider, in which Judge Brown stated he believed that the sentence complied with the terms of the agreements. We therefore conclude that the plea agreements were approved and accepted. However, this record reflects that Judge Brown also misunderstood the terms of the plea agreements.

**{18}** The question before us is whether, notwithstanding the misunderstanding, the plea agreements must be enforced under *Pieri*, *Sisneros*, and *Mares*. Our conclusion is in the affirmative. *See Elmore v. Commonwealth*, 236 S.W.3d 623, 628-29 (Ky. Ct. App. 2007) (holding that where the district court misconstrued the plea agreement, on remand the defendant should be permitted to choose whether to enforce the agreement as written or withdraw his guilty plea); *State v. Reaves*, 2008 SD 105, ¶ 11, 757 N.W.2d 580 (holding that where the district court misconstrued the plea agreement to permit it to sentence the defendant to any legal sentence, so long as it suspended any portion above the fifteen-year cap, enforcement of the agreement as written was the proper remedy). A defendant who has pled guilty in exchange for a specific sentence is entitled to have the agreement enforced as a matter of due process. *Sisneros*, 98 N.M. at 281, 648 P.2d at 320. Similarly, when the prosecution has acted in reliance on the agreement by dismissing charges or allowing potential witnesses to be excused from testifying, it too has an interest in having the agreement enforced. When an agreement is capable of different interpretations, the district court has authority to clear up any ambiguity before it approves and accepts the plea agreement, and the agreement is no longer ambiguous as to that matter. However, when the district court imposes a sentence that does not conform to the agreement, the interests of justice are better served by enforcing the agreement instead of forcing a defendant to either accept a sentence that does not conform to the agreement, or alternatively, by forcing the defendant to withdraw the guilty plea.

**CONCLUSION**

**{19}** The judgment and sentence is vacated and the case is remanded to the district court to enter a judgment and sentence that conforms to the plea agreements.

**{20}   IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

7

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for _State v. Gomez_, No. 30,000**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DP | Due Process |
| | |
| **CN** | **CONTRACTS** |
| CN-AM | Ambiguous Contracts |
| CN-SP | Specific Performance |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-CL | Controlled Substances |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-AS | Alteration of Sentence |
| CA-DU | Due Process |
| CA-GP | Guilty Plea |
| CA-PP | Plea and Plea Bargaining |