Certiorari Granted, May 11, 2012, No. 33,571

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: 2012-NMCA-051

Filing Date: March 16, 2012

Docket No.  29,244

STATE OF NEW MEXICO,

    Plaintiff-Appellee,

v.

ANDREW MILLER,

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth H. Martinez, District Judge**

Gary K. King, Attorney General
Santa Fe, NM

Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**BUSTAMANTE, Judge.**

**{1}**     Defendant Andrew Miller was indicted on sixty-one charges related to money he was alleged to have obtained fraudulently from Roberta Beale (Victim).  He entered into a plea agreement pursuant to which both he and the State agreed to a maximum sentence of forty

1

years. The district court accepted the plea agreement but sentenced Defendant to forty-two years imprisonment, nine of which were suspended, for an initial incarceration of thirty-three years. Because the forty-two year sentence violated his plea agreement, we reverse.

## I.  BACKGROUND

**{2}**    This case comes to us from two district court cases against Defendant that were consolidated below. In the first, CR 2006-3283, Defendant was indicted on thirty-five counts involving fraud and embezzlement. In the second, CR 2007-3827, he was indicted on twenty-six counts involving fraud and forgery. The combined basic sentences for these two cases exceeded 250 years.

**{3}**    Defendant entered into a plea agreement in which all but six of the counts against him were dismissed. The "Sentencing Agreement" portion of the agreement stipulated that "[t]he parties agree that there shall be a minimum sentence of ten . . . years and a maximum sentence of [forty] years at initial sentencing. The remaining two years of the [forty-two] year exposure shall run concurrent with parole of two years." Similarly, the "Potential Incarceration" portion of the agreement stated that "[i]f the court accepts this agreement, the [D]efendant will be ordered to serve a minimum sentence of ten . . . years and a maximum sentence of [forty] years in the Department of Corrections at initial sentencing." The agreement also incorporated a forfeiture stipulation in which the parties agreed that all "vehicles purchased using money obtained using [Victim's] money" would be subject to forfeiture. The plea agreement was accepted by the court on August 7, 2008.

**{4}**    After the plea was accepted but before sentencing, Defendant moved to withdraw his guilty plea. Pursuant to *Santobello v. New York*, 404 U.S. 257 (1971) and *State v. Sisneros*, 98 N.M. 279, 648 P.2d 318 (Ct. App. 1981), *rev'd on other grounds*, 98 N.M. 201, 647 P.2d 403 (1982), Defendant argued that he was entitled to withdraw his plea because the State was not fulfilling its obligations under the plea agreement. In particular, Defendant claimed that "the [S]tate promised th[at] Defendant would be allowed visits with his son and the mother." Defendant argued that failure to allow visitation "provide[d] a fair and just reason to withdraw the plea prior to sentencing."

**{5}**    At the sentencing hearing, the State requested a sentence of forty-two years. The State contended that this was appropriate because despite the provision in his plea agreement that he would not operate any businesses from jail, Defendant was currently running a business called "Leisure Entertainment" from jail. Defendant admitted to running the business. The district court sentenced Defendant to forty-two years imprisonment followed by two years of parole and five years of probation. It then suspended nine of the years. Defendant did not sign the judgment and sentence, but instead wrote in that he "object[ed] as to pre-sentence confinement time[,] length of sentence[,] and [the] ban on conducting business in [the department of corrections]." Defendant did not file a post-sentence motion to withdraw his plea, but instead filed a notice of appeal to this court.

2

**{6}** The case was initially assigned to the summary calendar. We expressed concern that the "district court's sentence [did] not appear to be in accordance with the plea agreement." However, our review of the record led us to believe that the district court "may have simply made a clerical error in the written judgment." We therefore remanded "for clarification of the judgment and sentence," ordering that "the district court shall enter . . . findings and/or corrected judgment."

**{7}** On February 12, 2010, the district court held a hearing devoted to the length of the sentence, after which it filed supplemental findings of fact and conclusions of law with this Court. The district court made it clear that it understood the plea agreement to require a forty-two year sentence. The court interpreted the forty-year maximum sentence to mean that at least two years of Defendant's sentence must be suspended. Importantly, the court entered a finding setting forth its understanding of the sentence cap.

> It is the custom and practice of the Second Judicial District Court in administering plea and disposition agreements in criminal matters to interpret the language of a minimum sentence of "[ten] years and a maximum of [forty] years at initial sentencing" to constitute a sentencing floor and cap of actual incarceration to be served in the Department of Corrections. However, by its plain meaning the cap on the term of incarceration applies only at[] "initial sentencing." Such language does not speak to the overall sentencing exposure for the required basic sentences which the court must impose for each count.

The court also entered several conclusions of law. Several of these discussed the district court's authority to sentence, essentially setting forth the provisions in NMSA 1978, Sections 31-18-13 (1993), -15 (2007), and -15.1 (2009) that require a district court to sentence a defendant to the basic sentence unless there is an aggravating or mitigating circumstance. One conclusion discussed this Court's holding in *State v. Bencomo*, 109 N.M. 724, 790 P.2d 521 (Ct. App. 1990), that a district court abuses its discretion when it does not follow the sentence recommendation in a plea agreement. However, the court concluded that it had followed the terms of the plea agreement because, in its view, the parties had "agreed that all counts would run consecutively for a total basic exposure of [forty-two] years and that [Defendant's] exposure of incarceration at initial sentencing would be no more than [forty] years." The court therefore again denied Defendant's motion to withdraw his plea agreement.

## II.    DISCUSSION

**{8}** Defendant presents four arguments on appeal: (1) that the district court abused its discretion by denying his motion to withdraw his plea after adopting a sentence outside of the plea agreement, (2) that his trial on the criminal charges at issue here violates his rights against double jeopardy because the State had already forfeited his property, (3) that the district court incorrectly calculated the restitution he owed, and (4) that the district court

3

credited him with less pre-sentence confinement than he was due. Because we reverse the denial of Defendant's motion to withdraw his plea, we do not reach his remaining arguments.

## A. Motion to Withdraw Plea

**{9}** Defendant argues that the district court was required to allow him to withdraw his plea due to several circumstances he alleges were outside the scope of the plea. These include (1) that the court imposed a longer sentence than contemplated in the plea agreement, (2) that the court did not include visitation rights for Defendant's girlfriend and son in its judgment and sentence, (3) that the court failed to order the return of Defendant's Mercedes, and (4) that the court's order disqualifying Defendant's first attorney impacted his decision to enter into the plea. The State contends that the forty-two year sentence with nine years suspended is consistent with the plea agreement. Because we hold that the imposition of a forty-two year sentence violated the sentence cap in the plea agreement, we do not address the additional complaints Defendant has raised regarding the plea.

**{10}** We review the denial of a motion to withdraw a plea for abuse of discretion. *See State v. Hunter*, 2006-NMSC-043, ¶ 11, 140 N.M. 406, 143 P.3d 168. "[T]he [district] court abuses discretion when it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *Aragon v. Brown*, 2003-NMCA-126, ¶ 9, 134 N.M. 459, 78 P.3d 913.

**{11}** "A plea agreement is a unique form of contract whose terms must be interpreted, understood, and approved by the district court." *State v. Gomez*, 2011-NMCA-120, ¶ 9, 151 N.M. 67, 267 P.3d 831. Once a plea has been accepted, the dictates of due process require the district court to honor the agreement. *Sisneros*, 98 N.M. at 281, 648 P.2d at 320; *see also* Rule 5-304(C) NMRA (stating that, if the plea agreement is accepted, "the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement"). Failure to do so is a breach of the plea agreement and is treated as a rejection of the plea. *See Gomez*, 2011-NMCA-120, ¶ 11. "[I]f the defendant and the State have bargained for a specific sentence and the court rejects the specific sentence, the court must give the defendant an opportunity to withdraw his or her plea agreement." *State v. Pieri*, 2009-NMSC-019, ¶ 1, 146 N.M. 155, 207 P.3d 1132.

## 1. The Plea Agreement Was For A Specific Sentence

**{12}** In order to determine which law applies in this case, we must first determine whether the plea agreement in this case called for a specific sentence or whether the State merely promised to recommend a sentence. Where the parties agree to a specific sentence and the district court accepts the plea, the court must enforce the terms of the plea or allow the plea to be withdrawn. *Santobello*, 404 U.S. at 262; *Pieri*, 2009-NMSC-019, ¶¶ 30, 33. If the parties agreed only that the State would recommend a sentence, the standard that applies depends on the date of the agreement. For agreements entered into before April 23, 2009, failure of the district court to follow the recommendation acts as a rejection of the plea. *See*

4

*Pieri*, 2009-NMSC-019, ¶ 34; *Eller v. State*, 92 N.M. 52, 54, 582 P.2d 824, 826 (1978), *overruled by Pieri*, 2009-NMSC-019, ¶ 36. For agreements entered into after that date, the district court may ignore the recommendation so long as the defendant had been made aware that the district court was not bound by it. *Pieri*, 2009-NMSC-019, ¶¶ 29, 33-34.

**{13}** The distinction between agreements for specific sentences and agreements to recommend sentences was critical in *Pieri*. There, the State agreed not to oppose a defendant's request for a suspended sentence in exchange for her promise to testify truthfully in a case against her husband. *Id.* ¶ 2. However, because the defendant was sentenced prior to her husband's trial, she did not have the chance to testify prior to sentencing. *Id.* ¶ 3. The State requested that the defendant serve time in prison and the defendant argued that she was entitled to specific performance of her plea bargain. *Id.* The district court imposed the maximum possible sentence. *Id.* On appeal, this Court reversed, concluding that the agreement not to oppose the defendant's request was an implicit promise to recommend a suspended sentence, and that under *Eller*, the district court's failure to follow the recommendation was a rejection of the plea and required the court to allow the defendant the opportunity to withdraw the plea. *See Pieri*, 2009-NMSC-019, ¶ 4.

**{14}** Our Supreme Court disagreed, concluding that this Court had incorrectly characterized the State's agreement not to oppose the defendant's request for a suspended sentence as an agreement to recommend that the defendant receive a suspended sentence. *See id.* ¶¶ 9-12. Because the agreement called for a specific action—namely, the State's refraining from opposing the request for a suspended sentence—the Court concluded that *Santobello*, not *Eller*, applied. *See Pieri*, 2009-NMSC-019, ¶¶ 9-10. The Court noted that "'when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *Id.* ¶ 15 (quoting *Santobello*, 404 U.S. at 262). Because the State, in violation of its promise, had opposed the request for a suspended sentence, the defendant "should have either been re[-]sentenced in front of a different judge or have been allowed to withdraw her plea." *Id.* ¶ 16.

**{15}** In this case, as in *Pieri*, the State made a specific promise that is enforceable not under *Eller*, but under *Santobello*. Here, the State did not agree merely to *recommend* a sentence of between ten and forty years—it agreed that Defendant's *actual sentence* would be in that range. Regardless of whether the sentencing cap could be read to include the forty-two year sentence in this case, it is clear that the plea agreement embodies a promise for a sentence within a particular range, not a promise to recommend a sentence within a range. *Pieri* and *Santobello* therefore apply, and Defendant should have the opportunity to withdraw his plea or to be sentenced under the plea agreement by a different judge if this promise was not enforced.

**{16}** The fact that this is a *Santobello* case had implications beyond the remedy for breach. Where a specific sentence is agreed upon, the district court must enforce it. In its supplemental findings, the district court appeared to believe that it was compelled by our

5

sentencing laws to impose a basic sentence of forty-two years. The parties do not raise, and we do not decide, whether the district court erred in determining that our sentencing laws require the imposition of a basic sentence of forty-two years. Instead, our review is limited to whether the district court's sentence conformed to the language of the plea agreement. Here, however, it was the plea agreement, not the sentencing statutes, which the district court was bound to enforce. *See Gomez*, 2011-NMCA-120, ¶ 16 ("Once the plea is accepted, the court is bound by the dictates of due process to honor the agreement and is barred from imposing a sentence that is outside the parameters set by the plea agreement."). If the district court was unhappy with the State's choice, it should not have accepted the agreement. *See State v. Mares*, 119 N.M. 48, 51, 888 P.2d 930, 933 (1994). Because it did accept the agreement, it was bound to enforce the agreement's terms.

## 2. The Maximum Permissible Sentence Was Forty Years

**{17}** We proceed to the question of whether the forty-two year sentence with nine years suspended was inconsistent with the language in the plea agreement limiting the initial sentence to forty years. Defendant has consistently argued that the forty-two year sentence exceeds the forty-year maximum contemplated in the plea agreement. The State contends that the forty-two year sentence was in accordance with the forty-year maximum because the "at initial sentencing" language signaled that the limitation was not on the sentence, but on the initial period of incarceration.

**{18}** Appellate courts "construe the terms of the plea agreement according to what [the d]efendant reasonably understood when he entered the plea." *State v. Fairbanks,* 2004-NMCA-005, ¶ 15, 134 N.M. 783, 82 P.3d 954 (internal quotation marks and citation omitted).

> When there is any ambiguity in a plea agreement and the district court resolves the ambiguity with the parties at the time of the plea, the agreement is no longer ambiguous on that point. However, if an ambiguity is not resolved by the district court and no extrinsic evidence is introduced that would resolve it, the reviewing court may rely on the rules of construction, construing any ambiguity in favor of the defendant. Under such circumstances, we review the terms of the plea agreement de novo.

*Gomez*, 2011-NMCA-120, ¶ 9 (internal quotation marks and citations omitted). However, courts "should turn to rules of construction only after it has used all other methods of resolving the ambiguity, and plea agreements should be construed in favor of the non-drafting party only when an ambiguity cannot be resolved by a review of the relevant direct and extrinsic evidence." *Mares*, 119 N.M. at 52, 999 P.2d at 934.

**{19}** We recently rejected the argument that the portion of a sentence that is initially suspended does not count as part of the sentence. In *Gomez*, a defendant entered into three plea agreements covering six cases against him. 2011-NMCA-120, ¶ 2. Each agreement

6

specified that Gomez would serve between zero and nine years of incarceration, probation, treatment, or some combination thereof. *Id.* ¶¶ 3, 5, 6. The second and third agreements specified that the sentences in those agreements would run concurrent with the sentence in the first agreement. *Id.* ¶¶ 5, 6. Initially, the district court deferred sentencing and ordered Gomez to attend a drug treatment program. *Id.* ¶ 7. However, Gomez violated one of the conditions of his release, and the district court imposed a sentence of twenty-one years, with sixteen suspended, resulting in an initial incarceration of five years. *Id.* ¶ 8. Gomez argued that the sentence was not in conformance with his plea, but the district court disagreed, stating that a sentence of five years incarceration and five years probation was within the plea since each was less than the nine-year cap. *Id.*

**{20}** On appeal, this Court reversed, stating that the agreements were "unambiguous in stating that the total time [Gomez would] serve pursuant to each agreement [was] zero to nine years." *Id.* ¶ 10. "We reject[ed] the State's argument that the use of the term 'serve' in the first agreement indicate[d] an intent to allow for an actual sentence of something greater than nine years, so long as any period above the nine-year cap [was] suspended or deferred." *Id.* ¶ 11. In doing so, we reasoned that the judgment and sentence actually filed ordered Gomez to serve twenty-one years. *Id.* The fact that the court had ordered sixteen years of the sentence to be suspended did not change the length of the sentence. *Id.* ("Suspending execution of sixteen years of actual incarceration unless, and until, [the district court] orders otherwise, does not change the fact that Gomez was sentenced to a prison term of twenty-one years.").

**{21}** Our analysis in the present case begins with the language from the "SENTENCING AGREEMENT" portion of Defendant's plea specifying that "[t]he parties agree that there shall be a minimum sentence of ten . . . years and a maximum sentence of [forty] years at initial sentencing." By itself, this language is unambiguous, and requires that the maximum sentence be no longer than forty years. It refers not to the initial period of incarceration, but to the "maximum sentence." Nevertheless, the State argues that the phrase "at initial sentencing" transforms this from a limit on the sentence into a limit on the initial period of incarceration.

**{22}** Our holding in *Gomez* dispenses with the State's argument that the "at initial sentencing" language allows for a sentence longer than forty years. *Gomez* held that the suspended portion subtracts not from the overall length of the sentence, but from the initial period of incarceration. "It is well established that a district court generally cannot increase a valid sentence once a defendant begins serving that sentence." *State v. Redhouse*, 2011-NMCA-118, ¶ 7, 269 P.3d 8 (alteration, internal quotation marks and citation omitted). The phrase "at initial sentencing" is therefore of no effect when applied to a sentence, because the sentence cannot later be increased. It could only have meaning when applied to incarceration. But the State in this case chose to apply the phrase to a limitation on the sentence. We do not believe that Defendant would have reasonably understood that this phrase could transform the clear and unambiguous word "sentence" into "initial period of incarceration."

7

**{23}**    The most problematic part of the agreement is the poorly drafted, hand-written language immediately following the sentence cap. It states: "The remaining two years of the [forty-two] year exposure shall run concurrent with parole of two years." The meaning of this language is unclear. It could, as the State contends, call for a forty-two year sentence with two years suspended. Alternatively, as Defendant appears to argue, it could mean that two years of the forty-year sentence would be suspended, or that a separate two-year sentence would run concurrently with the forty years.

**{24}**    The only thing clear about this language is that its meaning cannot be interpreted without additional evidence or resort to rules of construction. We find no indication in the record that the district court resolved the ambiguity in this language prior to accepting the plea. At the plea hearing, the district court read the language but did not comment on or otherwise interpret its meaning. The ambiguity was therefore unresolved when the plea was accepted. Subsequently, at the sentencing hearing, Defendant indicated his understanding that the "agreement was that the two [years] was going to run concurrent with the [forty]," thereby showing that he still did not understand the language of the plea to allow for a forty-two year sentence.

**{25}**    Because the district court did not resolve the ambiguity, we address the meaning of the sentence cap de novo. Defendant's statements at the sentencing hearing indicate that his subjective belief was that a sentence of forty-two years was inconsistent with the agreement. Given the clear language of the sentencing cap, we conclude that his understanding was reasonable. Furthermore, to the extent that the sentence was ambiguous, we construe it against the State. The portion of the agreement that was concisely written clearly and unambiguously imposed a forty-year maximum sentence. The handwritten portion was drafted in such a way that it could mean anything, and the district court did nothing to clarify its meaning prior to accepting the agreement.

**{26}**    Finally, nothing else in the agreement would have alerted Defendant that a sentence in excess of forty years was contemplated. The agreement sets forth the maximum penalties for the charges to which Defendant pleaded guilty. These amount to forty-two years, with the potential for a one-third modification. However, this section informs Defendant of the possible sentences for the counts to which he has pleaded guilty; it does not purport to embody a sentencing agreement between Defendant and the State. The agreement also provides: "The Defendant m[a]y be given a period of probation. If the [D]efendant later violates that probation or parole, the [D]efendant may be incarcerated for the balance of the sentence." This language explains the mechanics of probation, which gives the district court the discretion to suspend part of Defendant's sentence. This statement of the well established principles of probation cannot reasonably be read to modify the forty-year cap on Defendant's sentence. It also makes it absolutely clear that the Defendant may ultimately be incarcerated for the initially suspended portion of his sentence (if any).

**{27}**    We conclude that absent some explanation from the State or the district court, no defendant would reasonably understand that the "at initial sentencing" language could

8

transform such a clear maximum sentence limitation into what amounts to a minimum period of suspension. Under the State and the district court's reading of the sentence cap, a 1000 year sentence, with 960 years suspended, would have complied with the forty-year cap. The district court entered a finding that the use of this language represents the "custom and practice" in the Second Judicial District. We now hold that that practice is inadequate. The meaning of the agreement is determined not by the understanding of prosecutors and judges, but by what the defendant reasonably understood when entering the plea. Had the State desired an agreement that imposed the maximum sentence—even if it also wanted to impose a minimum period of incarceration—we have no doubt that it could have easily done so in a clear, unambiguous fashion. We therefore reverse the denial of Defendant's motion to withdraw his plea.

### 3.    Remedy

**{28}**    Having concluded that the district court rejected the plea agreement by sentencing Defendant to two years more than the maximum contemplated by the agreement, we turn our attention to what remedy is appropriate. The rejection of the plea entitles Defendant to the relief he has requested:  an opportunity to withdraw his plea. *See Pieri*, 2009-NMSC-019, ¶¶ 14-18.  However, we recognize that both Defendant and the State have an interest in enforcing the agreement. *See Gomez*, 2011-NMCA-120, ¶ 18. Should both parties so desire, the district court may also re-sentence Defendant in accordance with the plea.  *See Santobello*, 404 U.S. at 263; *Pieri*, 2009-NMSC-019, ¶ 5.

### B.    Remaining Issues

**{29}**    Because we have reversed, the judgment and sentence setting forth the amounts of restitution and pre-sentence confinement is of no effect.  We therefore do not reach Defendant's arguments on these issues.

**{30}**    Defendant also argues that the forfeiture of one of his vehicles prior to his conviction precludes the State from imposing any further punishment on him, and that his subsequent conviction therefore violated his right against double jeopardy.  However, as he candidly admits, "the record with respect to this issue may need to be further developed."  In fact, there was no evidence taken nor findings made regarding this issue.  The record is silent as to which cars were seized, whether any cars have yet been sold, and which if any of these vehicles were purchased using money fraudulently obtained from Victim.  Additionally, the stipulated order to forfeit was part of the plea, which we have held that Defendant may withdraw on remand.  For these reasons, we believe that any attempt to undertake an analysis at this point would result in an advisory opinion, which we decline to give. *See Santa Fe S. Ry., Inc. v. Baucis Ltd. Liab. Co.*, 1998-NMCA-002, ¶ 24, 124 N.M. 430, 952 P.2d 31 ("Our concern with issuing advisory opinions stems from the waste of judicial resources used to resolve hypothetical situations which may or may not arise.").  Defendant is free to develop a record on this issue, to reach a new  agreement that addresses his concerns, or to raise these issues at trial.

## III. CONCLUSION

**{31}** For the foregoing reasons, we reverse the order denying Defendant's motion to withdraw his plea, vacate the judgment and sentence, and remand for further proceedings consistent with this Opinion.

**{32}    IT IS SO ORDERED.**

_____

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**J. MILES HANISEE, Judge**

**Topic Index for _State v. Miller_, Docket No. 29,244**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DJ | Double Jeopardy |
| CT-DP | Due Process |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-FR | Fraud |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-DJ | Double Jeopardy |
| CA-DU | Due Process |
| CA-PP | Plea and Plea Bargaining |
| CA-SN | Sentencing |