This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                    **NO. 30,767**

**JUAN REYES**, **a/k/a PISTOLAS;**
**JUAN MANUEL REYES,**

    Defendant-Appellant.


**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth H. Martinez, District Judge**


Gary K. King, Attorney General
William H. Lazar, Assistant Attorney General
Santa Fe, NM

for Appellee

Jacqueline L. Cooper, Chief Public Defender
Carlos Ruiz de la Torre, Assistant Appellate Defender
Santa Fe, NM

for Appellant


## MEMORANDUM OPINION

**HANISEE, Judge.**

Defendant Juan Reyes appeals from the district court's denial of his motion to withdraw his no contest plea and from his sentence. The State concedes the district court erred in concluding Defendant's counsel adequately advised him regarding the immigration consequences of his plea. We would normally vacate the sentence and remand to the district court to determine, in the first instance, whether Defendant was prejudiced by his counsel's failure. The district court need not make that determination here, however, because the court committed another error. As the State further concedes, the court erred in imposing a sentence that exceeded the guaranteed maximum set forth in the plea agreement. Based on our precedent, Defendant must be given the opportunity to withdraw his plea as a result. Because this is the remedy he seeks, we vacate Defendant's sentence and remand to the district court with instructions to allow Defendant to withdraw his plea and, absent another plea, proceed to trial.

**BACKGROUND**

Defendant was charged with multiple counts, including attempted murder, arising out of events which took place on or about August 31, 2005. Pursuant to a plea and disposition agreement, Defendant pled no contest to one count of aggravated

2

battery with a deadly weapon, one count of conspiracy to commit aggravated battery with a deadly weapon, and two counts of contributing to the delinquency of a minor. The plea agreement was signed by Defendant and his counsel on December 5, 2006, and was entered by the court at the change of plea hearing. At the hearing, the court said to Defendant: "If you are not a United States citizen, you will have a change in your immigration status." Defendant said he understood.

The plea agreement states, in pertinent part: "The State will agree to a three . . . year cap at initial sentencing only. State and defense counsel agree to run counts consecutive to each other for a total exposure of seven-and a half . . . years." At the plea hearing, the court explained the sentencing agreement to Defendant as follows:

> Now, there is a sentencing agreement that provides that the State agrees to a three-year cap at initial sentencing only, which means that if the [c]ourt is inclined to sentence you to a term of imprisonment, the most I could sentence you to . . . is three years in the Department of Corrections.
>
> . . . .
>
> Now, . . ., although the sentencing agreement here provides for a cap of three years, do you understand that if the [c]ourt were to follow that and sentence you to three years of imprisonment or alternatively sentence you to a term of probation and you were to violate the terms and conditions of that probation . . ., I could sentence you to the Department of Corrections for the full term seven-and-a-half years? Do you understand that?

3

Defendant answered in the affirmative.

A sentencing hearing was held on February 9, 2007. The State requested a sentence of three years imprisonment, consistent with the terms of the plea agreement. Although neither party requested it, the court did not sentence Defendant at this hearing and instead ordered him to undergo a sixty-day diagnostic evaluation at the Department of Corrections prior to being sentenced. Defendant did not report for the evaluation and did not appear at the hearing on the State's motion to review conditions of release on May 31, 2007. Defendant later testified that sometime after the February 2007 hearing, he was detained by federal immigration authorities and voluntarily decided to go back to Mexico to avoid a deportation hearing. Because of Defendant's failure to appear at the May 2007 hearing, the court issued a bench warrant for his arrest. Defendant was arrested on January 2, 2009. The court cancelled the bench warrant in exchange for Defendant's posting a bond with the court.

On July 24, 2009, Defendant, represented by new counsel, filed a motion to withdraw his plea and requested an evidentiary hearing. Defendant argued, pursuant to *State v. Paredez*, 2004-NMSC-036, 136 N.M. 533, 101 P.3d 799, that he was not properly counseled as to the immigration consequences of his plea. He claimed he "understood that he was going to be placed on probation and that the plea was going

4

to delay his legal status, but not that he was going to be deported from the United States."

The court held an evidentiary hearing on Defendant's motion on June 30, 2010. Defendant's plea counsel testified he could not recall this specific case and had not reviewed his case file in advance of the hearing. He said it was his general practice to review with his clients "each important paragraph in the plea." Defendant's plea counsel was questioned by the State as follows:

A: Do you recall asking [Defendant] about his immigration status?

A: I don't have a specific memory of that, no.

Q: You don't.

A: I do not.

Q: So you don't know whether he was a US citizen, a resident alien, or an undocumented alien?

A: I remember we spoke in Spanish. As far as absolute memory that I asked that question, no, but it's always my practice to ask anyone who I assume is in that position if immigration is a concern.

Defense counsel asked Defendant's plea counsel whether he had the "general tendency" of "going through the elements of the crime" with his clients and explaining

how the plea might affect their immigration status. Defendant's plea counsel answered: "You know, I tend to tell them, if it's a felony conviction . . . [c]ertainly, it will affect your immigration status, and it will probably result in your deportation."

Defendant testified he was born in Mexico and came to the United States when he was four years old. He said he never met with his attorney in his office, and met with him in person for the first time at his plea hearing. He spent "two, three minutes" reviewing the plea agreement with his attorney prior to signing the document. He testified he cannot read in English or Spanish and the agreement was not interpreted for him in Spanish. Defendant was questioned by his counsel as follows:

Q: Were you told by [your plea counsel] that signing the plea would deport you for sure from the United States?

A: No. If he would have told me, I would have never done it. I would have rather fight the case.

. . . .

Q: Prior to signing the Plea and Disposition Agreement, were you planning on staying in the United States?

A: Yes, because all my life is here. I don't have anything in Mexico.

Defendant testified that he was married to a United States citizen, Lizbeth Reyes. Defendant was not married to Reyes at the time he signed the plea agreement. On cross-examination, the following exchange took place:

6

Q:     Do you remember the Judge asking you—well, telling you this: "If you are not a United States citizen, you will have a change in your immigration status. Do you understand that as well?"

A:     I remember that, but I thought I would not be deported.

Q:     But he told you that you will have a change, correct?

A:     Yes, it will change, but I didn't think that I would be deported.

The court denied Defendant's motion on July 15, 2010. The court based its ruling on the following factual finding:

> **THE COURT FINDS** that Defendant's counsel at the time of Plea fully advised Defendant that by entering the Plea he would have a change in his immigration status and would likely be deported. The [c]ourt also at the time of [the] Plea specifically informed . . . Defendant, ". . . if you are not a United States citizen you will have a change in your immigration status. Do you understand that, as well?" to which the Defendant answered, "Yes".

The court held a sentencing hearing on August 20, 2010. The State noted the sentencing agreement might be "null and void" because of Defendant's failure to appear for the diagnostic evaluation. The State did not specifically argue this point, however, and requested the court impose a sentence of three years. Defense counsel stated: "Now, if [you] believe[] that the sentencing agreement is void, then the whole entire plea is void, and we would be able to withdraw that as of today. In any event, if you think that [it is] still in effect, then we can proceed to sentencing." Defense

counsel requested a sentence of probation.

The court sentenced Defendant to five years imprisonment. It explained the sentence was warranted because Defendant did not turn himself in for the sixty-day evaluation and thus "any cap on my sentencing authority was broken." The State sought and received clarification from the court that it was not voiding the entire plea agreement, "just the sentencing agreement."

**DISCUSSION**

On appeal, Defendant argues the district court erred in denying his motion to withdraw his no contest plea because his attorney failed to adequately advise him regarding the immigration consequences of the plea. Defendant also argues the court erred in sentencing him to a term of imprisonment that exceeded the specific, guaranteed maximum set forth in the plea agreement. The State concedes the court erred in both respects. Because we are not required to accept the State's concessions, we independently review the merits of both of Defendant's arguments. *See State v. Foster*, 1999-NMSC-007, ¶ 25, 126 N.M. 646, 974 P.2d 140, *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683.

**A.    Motion to Withdraw Plea**

We review the district court's denial of a motion to withdraw a guilty or no

contest plea for abuse of discretion. *See Paredez*, 2004-NMSC-036, ¶ 5. "The district court abuses its discretion in denying a motion to withdraw a guilty plea when the undisputed facts establish that the plea was not knowingly and voluntarily given." *Id.* (internal quotation marks and citation omitted). "The abuse [] of [] discretion standard does not preclude an appellate court from correcting errors premised on the trial court's misapprehension of the law." *State v. Carlos*, 2006-NMCA-141, ¶ 9, 140 N.M. 688, 147 P.3d 897 (alterations, internal quotation marks, and citation omitted). "Where, as here, a defendant is represented by an attorney during the plea process and enters a plea upon the advice of that attorney, the voluntariness and intelligence of the defendant's plea generally depends on whether the attorney rendered ineffective assistance in counseling the plea." *State v. Barnett*, 1998-NMCA-105, ¶ 12, 125 N.M. 739, 965 P.2d 323. "We afford de novo review of mixed questions of law and fact concerning the ineffective assistance of counsel." *Id.* ¶ 13.

"For a successful ineffective assistance of counsel claim, a defendant must first demonstrate error on the part of counsel, and then show that the error resulted in prejudice." *State v. Bernal*, 2006-NMSC-050, ¶ 32, 140 N.M. 644, 146 P.3d 289. "An error only occurs if representation falls below an objective standard of reasonableness." *Id.* (alteration, internal quotation marks, and citation omitted).

9

Defendant argues his counsel's performance was deficient because he did not properly advise him regarding the immigration consequences of his plea. In *Paredez*, our Supreme Court held that "criminal defense attorneys are obligated to determine the immigration status of their clients. If a client is a non-citizen, the attorney must advise that client of the specific immigration consequences of pleading guilty, including whether deportation would be virtually certain." 2004-NMSC-036, ¶ 19. "[W]hen a defendant's guilty plea almost certainly will result in deportation, an attorney's advice to the client that he or she 'could' or 'might' be deported would be misleading and thus deficient." *Id.* ¶ 15. Defendant pled no contest to an offense that constitutes an aggravated felony under federal law and thus, like in *Paredez*, his plea was almost certain to result in his deportation. *See id.* ¶ 4.

Defendant's plea counsel testified at the evidentiary hearing that he could not recall whether he asked Defendant about his immigration status. He also could not recall what specific advice he provided to Defendant, but said he tended to tell clients "if it's a felony conviction . . . [c]ertainly it will affect your immigration status, and it will probably result in your deportation." The district court found Defendant's plea counsel "fully advised Defendant that by entering the Plea he would have a change in his immigration status and would likely be deported." This factual finding is

supported by the record, but we cannot agree that this satisfies the requirements set forth in *Paredez*.

In *Carlos*, we explained:

> [I]t is difficult to read *Paredez* in any way other than stating a general rule that requires criminal defense counsel, after determining the immigration status of the defendant, to read and interpret federal immigration law and specifically advise the defendant whether a guilty plea will result in almost certain deportation. It is difficult to find in the *Paredez* analyses and holding much leeway for counsel's advice short of a definite prediction as to the likelihood of deportation based on the crimes to which a defendant intends to plead and the crimes listed in federal law for which a defendant can be deported.

2006-NMCA-141, ¶ 14. There is no evidence that Defendant's plea counsel determined Defendant's immigration status and specifically advised him as to the likelihood of deportation. Defendant's plea counsel did not testify that it was his general practice to review federal immigration law and predict the likelihood of deportation based on the crimes to which his clients intended to plea. The district court found Defendant knew he would have a change in his immigration status and knew he would likely be deported, but this is not sufficient to meet the requirements under *Paredez*. The district court erred in concluding Defendant's counsel's performance was sufficient.

This does not, however, end our inquiry. To succeed on a claim of ineffective

assistance of counsel, a defendant must show his counsel's deficient performance prejudiced his defense. *See Bernal*, 2006-NMSC-050, ¶ 32. "A non-citizen must show that he would not have entered the plea if he had been given constitutionally adequate advice as to the specific consequences of his plea, together with a reasonable probability that he would have gone to trial instead of pleading guilty[.]" *Carlos*, 2006-NMCA-141, ¶ 19 (citation omitted).

Defendant contends there was "ample evidence" from his own testimony that he "would have elected to go to trial if properly counseled." This is not sufficient. "In our prior cases, we have demanded more than the self-serving statements of the defendants to prove prejudice." *Garcia v. State*, 2010-NMSC-023, ¶ 42, 148 N.M. 414, 237 P.3d 716 (internal quotation marks and citation omitted).

> [W]e look to whether there is a reasonable probability that the accused would have chosen to go to trial rather than pleading guilty if he had received adequate representation. In making that determination, we have considered (1) the strength of the [s]tate's evidence, reasoning that a defendant may be more likely to plead guilty if the evidence against him is strong, and (2) pre-conviction statements or actions that may indicate whether the defendant was disposed to plead or go to trial.

*Id.* (alterations, internal quotation marks, and citations and omitted). The record does not contain any information regarding the strength of the State's evidence or Defendant's pre-conviction statements or actions which may indicate whether he was

disposed to plead or go to trial. We generally prefer for district courts to address issues in the first instance. *See Peña Blanca P'ship v. San Jose Cmty. Ditch*, 2009-NMCA-016, ¶ 8, 145 N.M. 555, 202 P.3d 814. We followed that course in both *Paredez* and *Carlos*. *See Paredez*, 2004-NMSC-036, ¶ 24 (remanding to the district court for an evidentiary hearing on prejudice); *Carlos*, 2006-NMCA-141, ¶ 23 (same). We would do so here, but we conclude that an evidentiary hearing is unnecessary based on our resolution of the second issue Defendant raises on appeal, discussed below.

**B.     Sentence**

Defendant contends the district court erred in imposing a sentence that violated the terms of the plea agreement. "[W]e review the terms of the plea agreement de novo. In reviewing and interpreting plea agreements, our task is to construe their terms according to what a defendant reasonably understood when he entered the plea." *State v. Gomez*, 2011-NMCA-120, ¶ 9, 267 P.3d 831.

Our Supreme Court explained in *State v. Pieri*:

There are two basic types of bargained-for sentencing dispositions in plea agreements: (1) an agreement to plead guilty or no contest in exchange for a specific, guaranteed sentence and (2) an agreement where the [s]tate promises to recommend a particular sentence or not to oppose the defendant's request for a specific sentence.

13

2009-NMSC-019, ¶ 30, 146 N.M. 155, 207 P.3d 1132. "[T]he type of plea agreement dictates whether the court is bound to impose the sentence disposition contained in the plea." *Id.* Where the agreement provides for a specific, guaranteed sentence, 'the court must impose the sentence." *Id.*

It is clear that Defendant's plea agreement provided for a specific, guaranteed maximum sentence. The plea agreement provides: "The State will agree to a three . . . year cap at initial sentencing only. State and defense counsel agree to run counts consecutive to each other for a total exposure of seven and a half . . . years." At the plea hearing, the district court explained to Defendant: "[I]f the Court is inclined to sentence you to a term of imprisonment, the most I could sentence you to . . . is three years in the Department of Corrections." The court explained that if Defendant was sentenced to a term of probation and he violated the terms and conditions of probation, then he could be sentenced to the full term of seven-and-a-half years. Although an initial sentencing hearing was held on February 9, 2007, Defendant was not sentenced at that time. Instead, he was ordered to report to the Department of Corrections for a diagnostic evaluation. Defendant did not report for the evaluation and a second sentencing hearing was held on August 20, 2010. At that time, the court sentenced Defendant to a term of five years imprisonment. The transcript reflects some

14

confusion between counsel and the court as to whether the sentencing agreement was void and the court apparently believed it was not bound by the sentencing agreement. The court explained that "any cap on my sentencing authority was broken" when Defendant did not turn himself in for the sixty-day evaluation. Although this may seem reasonable, it was not consistent with the language contained in Defendant's plea agreement, which provided for a three-year cap at initial sentencing. Moreover, the plea agreement remained the document pursuant to which Defendant was then being sentenced, despite the intervening occurrence of events between Defendant's plea and his sentencing. When Defendant was first sentenced on August 20, 2010, the court in effect rejected the plea agreement by imposing a sentence that exceeded the three-year cap.

The only remaining question concerns Defendant's remedy. Rule 5-304(D) NMRA states in pertinent part:

> If the court rejects a plea agreement, the court shall inform the parties of this fact, advise the defendant personally in open court that the court is not bound by the plea agreement, afford either party the opportunity to withdraw the agreement and advise the defendant that if the defendant persists in a guilty plea or plea of no contest the disposition of the case may be less favorable to the defendant than that contemplated by the plea agreement.

*See State v. Miller*, 2012-NMCA-051 ¶ 11, 278 P.3d 561, *cert. granted,* 2012-

15

NMCERT-___, ___ P.3d ___ (No. 33,571, May 11, 2012) (establishing that a district court's imposition of sentence in excess of that allowed by plea agreement constitutes a rejection of agreement and entitles Defendant to withdraw his plea). Because actions of the district court constituted a rejection of the plea agreement, Defendant must be given the opportunity to withdraw his plea. Since this is the remedy he seeks, we reverse Defendant's sentence and remand with instructions to allow Defendant to withdraw his plea.

**IT IS SO ORDERED.**


_____
**J. MILES HANISEE, Judge**

**WE CONCUR:**


_____
**MICHAEL E. VIGIL, Judge**


_____
**TIMOTHY L. GARCIA, Judge**