IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2013-NMSC-048

Filing Date: November 18, 2013

Docket No. 33,571

STATE OF NEW MEXICO,

Plaintiff-Petitioner,

v.

ANDREW JAMAL MILLER,

Defendant-Respondent.

ORIGINAL PROCEEDING ON CERTIORARI
Kenneth H. Martinez, District Judge

Gary K. King, Attorney General
Ralph E. Trujillo, Assistant Attorney General
Santa Fe, NM

for Petitioner

Bennett J. Baur, Acting Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Respondent

OPINION

VIGIL, Justice.

**{1}** We issued a writ of certiorari to review the Court of Appeals' decision that the district court's sentence of Defendant Andrew Miller violated the terms of a plea agreement that the district court had accepted. We agree with the Court of Appeals that his sentence violates the plea agreement. However, we disagree with the remedy that the Court of Appeals ordered and clarify our case law on this account. Accordingly, we reverse the Court of Appeals and remand to the Court of Appeals for proceedings consistent with this opinion.

1

# I.    BACKGROUND

**{2}**    In 2008, Defendant faced sixty-one counts consisting mostly of fraud and embezzlement charges between two indictments against him. He entered into a plea agreement with the State covering both indictments, which the district court accepted. Defendant pleaded Guilty or No Contest to four second-degree felonies and two third-degree felonies. In exchange for Defendant's pleas, the State dropped all but six charges against him.

**{3}**    The plea agreement in this case contains three provisions relevant to sentencing. First, the agreement states that the parties agree to run the sentence for each count consecutively. Second, under the heading "SENTENCING AGREEMENT" it reads, in part: "The parties agree that there shall be a minimum sentence of ten (10) years and a maximum sentence of 40 years at initial sentencing." There was also a handwritten clause below this that stated: "The remaining two years of the 42 year exposure shall run concurrent with parole of two years." Finally, under the heading "POTENTIAL INCARCERATION" it reads:

> If the court accepts this agreement, the defendant will be ordered to serve a minimum sentence of ten (10) years and a maximum sentence of 40 years in the Department of Corrections at initial sentencing. The Defendant may be given a period of probation. If the defendant later violates that probation or parole, the defendant may be incarcerated for the balance of the sentence.

**{4}**    Prior to sentencing, Defendant moved to withdraw his pleas, arguing that the State was not fulfilling its promise regarding allowed visitations from his son. The State responded that it would be highly prejudiced if Defendant were permitted to withdraw his pleas. The district court denied Defendant's motion and sentenced Defendant. The judgment and sentence the district court ordered provided, in part:

> The sentences in [the first indictment] are to [run] consecutively to the sentences in [the second indictment] for a total incarceration of forty two [sic] (42) years, followed by two years of parole. The court further orders that nine (9) years is suspended for an actual sentence of imprisonment of thirty three (33) years.

Instead of signing the judgment and sentence, Defendant wrote by the signature line that he objected to the length of the sentence, among other things.

**{5}**    Defendant then appealed to the Court of Appeals, arguing that the district court imposed a longer sentence than contemplated by the plea agreement since the plea agreement called for a maximum sentence of forty years and the court sentenced him to forty-two years. *State v. Miller*, 2012-NMCA-051, ¶ 17, 278 P.3d 561. The State responded that the forty-year maximum term in the plea agreement applied solely to "initial sentencing," meaning

2

it only applied to the cap on the initial period of incarceration. *Id.*

**{6}** Initially, the Court of Appeals determined that the forty-two-year sentence might be a clerical error in the written judgment so it remanded the case to the district court to clarify the sentence and enter findings or a corrected judgment. *Id.* ¶ 6. However, the district court did not amend the sentence and instead entered a finding that "by its plain meaning the cap on the term of incarceration applies only at, 'initial sentencing.'" Such language does not speak to the overall sentencing exposure for the required basic sentences which the court must impose for each count." The district court also entered several conclusions of law, which discussed the district court's authority to sentence and concluded that it was required by law to impose a forty-two-year sentence in the absence of aggravating or mitigating factors. The district court determined that Defendant had "no grounds on which to be allowed to withdraw his plea agreement" and denied Defendant's motion to withdraw his plea agreement.

**{7}** The Court of Appeals "reverse[d] the denial of Defendant's motion to withdraw his plea." *Id.* ¶ 27. However, the Court of Appeals then also concluded "that the district court rejected the plea agreement by sentencing Defendant to two years more than the maximum contemplated by the agreement" and held that Defendant must be given the opportunity to withdraw his plea or, if both parties agreed, "the district court may also re-sentence Defendant in accordance with the plea." *Id.* ¶ 28.

**{8}** The State petitioned for a writ of certiorari, which we granted. The State argues that the district court sentenced Defendant in conformity with the explicit terms of the plea agreement. We disagree with the State and agree with Defendant and the Court of Appeals that the forty-two-year sentence violates the plea agreement. However, we reverse the Court of Appeals' remand order for the reasons explained below. We remand to the district court to sentence Defendant according to his reasonable understanding of the plea agreement, requiring that his sentence contain a total period of incarceration between ten and forty years.

## II.     STANDARD OF REVIEW

**{9}** Since the State maintains that Defendant was sentenced according to the terms in the plea agreement, our task is to evaluate the terms in the plea agreement. "Upon review, [appellate courts] construe the terms of the plea agreement according to what Defendant reasonably understood when he entered the plea." *State v. Fairbanks*, 2004-NMCA-005, ¶ 15, 134 N.M. 783, 82 P.3d 954 (internal quotation marks and citation omitted); *accord State v. Mares*, 1994-NMSC-123, ¶ 12, 119 N.M. 48, 888 P.2d 930. "A plea agreement is a unique form of contract whose terms must be interpreted, understood, and approved by the district court." *State v. Gomez*, 2011-NMCA-120, ¶ 9, 267 P.3d 831. If the language in the written agreement is ambiguous, it is the district court's task to resolve that ambiguity with the parties. *Id.* If the court resolved the ambiguity, the agreement can no longer be said to be ambiguous as to that point. *Id.* But if the court failed to resolve the ambiguity and there is

3

no presentation of extrinsic evidence that would resolve it, then we "may rely on the rules of construction, construing any ambiguity in favor of the defendant. Under such circumstances, we review the terms of the plea agreement de novo." *Id.* (internal quotation marks and citation omitted).

**{10}** The State argues that the Court of Appeals erred in holding that the district court abused its discretion by denying Defendant's motion to withdraw his guilty plea. However, the Court of Appeals ultimately evaluated the plea agreement for ambiguity using a de novo standard. *Miller*, 2012-NMCA-051, ¶¶ 25-27. The abuse of discretion standard of review is inappropriate in this case because Defendant was entitled to appeal the sentence based upon his claim that it did not conform to the agreed upon plea agreement regardless of whether he had ever moved to withdraw his pleas. N.M. Const. art VI, § 2 (providing that aggrieved parties have the absolute right of one appeal); *see, e.g.*, *Gomez*, 2011-NMCA-120 (addressing the defendant's appeal of the district court's sentence, which he argued violated the terms of his plea agreement).

## III.    DISCUSSION

**{11}** As in this case, the interplay between our sentencing statutes is often the source of confusion in disputes over whether a sentence complies with a plea agreement. The Legislature has imposed basic sentencing requirements, but it has also granted courts broad discretion over certain sentencing elements. NMSA 1978, Section 31-18-15(B) (2007) requires that "[t]he appropriate basic sentence of imprisonment *shall* be imposed . . . *unless the court alters the sentence pursuant to the provisions of the Criminal Sentencing Act*." (Emphasis added.) The Criminal Sentencing Act provides the guidelines for altering the basic sentence, permitting the court to consider mitigating and aggravating factors to reduce or increase the basic sentence by up to one-third. *See* NMSA 1978, § 31-18-15.1(A), (G) (1993, amended 2009), *held unconstitutional by State v. Frawley*, 2007-NMSC-057, ¶ 29, 143 N.M. 7, 172 P.3d 144 (unconstitutionality abrogated by the 2009 amendment—the court now must find that aggravating factors exist beyond a reasonable doubt). A sentencing court also has authority to defer the sentence or suspend the execution of a sentence. *See* NMSA 1978, § 31-20-3(A), (B) (1985). Also, "whether multiple sentences for multiple offenses run concurrently or consecutively is a matter resting in the sound discretion of the trial court." *State v. Allen*, 2000-NMSC-002, ¶ 91, 128 N.M. 482, 994 P.2d 728 (internal quotation marks and citation omitted). Finally, the court has control over whether the maximum period of incarceration applies solely to initial sentencing or to post-sentencing aspects as well, such as probation revocation consequences. *See* NMSA 1978, § 31-21-15(B) (1989) (giving the court broad discretion when a probation violation is established to "continue the original probation, revoke the probation and either order a new probation with any condition provided for in Section 31-20-5 or 31-20-6 NMSA 1978, or require the probationer to serve the balance of the sentence imposed or any lesser sentence" or for deferred sentences, "the court may impose any sentence which might originally have been imposed").

**{12}** Parties have discretion in negotiating these sentencing and incarceration terms when

forming a plea agreement. *See Mares*, 1994-NMSC-123, ¶ 11 ("[T]he parties should be able to negotiate the terms of a plea agreement to the full extent allowed by law."). A defendant can negotiate for the actual sentence ordered at initial sentencing—within the limits of Section 31-18-15.1—by negotiating for the consideration of mitigating factors or for the State not to consider aggravating factors, as well as the amount of that sentence that the court actually executes either through suspension or deferment, and even whether any of that suspended time can be executed in post-sentencing procedures. *See id.* (rejecting the state's argument that a plea agreement promising a maximum period of incarceration deprives the court from incarcerating a defendant for a probation violation and holding that this Court will enforce such an agreed-upon provision). However, Rule 5-304(A)(1) NMRA commands that the district court judge not be a participant in any plea negotiations between the state and a defendant. "The judge's role is explicitly limited to acceptance or rejection of the bargain agreed to by counsel for the state, defense counsel, and defendant." Rule 5-304, comm. commentary.

{13}    Consequently, it is vital that the language in a plea agreement unambiguously explain which sentencing element has been bargained-for in order to avoid any misunderstandings between the parties or between the parties and the court over whether a term applies to the sentence to be ordered, the term of years that must be suspended, the initial period of incarceration, or the maximum period of incarceration. If the language in a plea agreement is unclear as to which sentencing element it contemplates, it is the court's responsibility to clarify the ambiguity so that the parties are truly in agreement and the court understands exactly what sentence it is agreeing to order if it chooses to ratify the agreement. *See Gomez*, 2011-NMCA-120, ¶ 9.

## A.    Defendant's Plea Agreement Is Ambiguous

{14}    In this case, since the parties agreed to run the sentences for each count consecutively, the court and the State are correct that the required starting point was a basic sentence of forty-two years since Defendant pleaded to four second-degree felonies and two third-degree felonies. *See* § 31-18-15(A)(6), (9) (stating the basic sentence for a second degree felony is nine years imprisonment and the basic sentence for a third degree felony is three years imprisonment). However, the district court was not bound by that figure. The court could have reduced the basic sentence for mitigating factors per Section 31-18-15.1(A)(1) by up to one-third, or fourteen years in this case. Further, the court also had discretion to determine what part of the ordered sentence must actually be served in prison.

{15}    The State and the district court disagreed with Defendant over whether the ten-year minimum and forty-year maximum required by the plea agreement applied to the initial period of incarceration that the court would order Defendant to serve in prison or to the total incarceration time to which Defendant was agreeing to be exposed. Defendant maintains that, as he understood it, he would face no more than forty years of incarceration under any circumstance, while the State maintains that the agreement made clear he was exposing himself to forty-two years of total incarceration if he violated probation conditions after

serving the initial executed sentence.

**{16}** We examine the language in the plea agreement to evaluate the reasonableness of Defendant's understanding. We first note that the "maximum sentence of 40 years" language in the plea agreement indicates that the actual sentence imposed by the court could be no more than forty years. We agree with the Court of Appeals that the "at initial sentencing" language does not transform the forty-year maximum *sentence* into a forty-year cap for the initial period of *incarceration*. *See Miller*, 2012-NMCA-051, ¶¶ 21-22. The language simply does not reflect the State's intent for the period to apply to the initial period of incarceration.

**{17}** The State argues that other portions of the agreement made it clear to Defendant that the court would be imposing a sentence of forty-two years, all of which he could potentially serve. We observe that nowhere in the agreement does it state that the court was required to or that it would be imposing a basic sentence of forty-two years. Under the heading "PENALTIES" the plea agreement states, "[t]he *maximum* penalty for these charges are" and then provides the basic sentence for each count to which Defendant pleaded guilty or no contest. (Emphasis added). The "maximum" language indicates that the sentence *could* total forty-two years if one did the math, not that it *must*.

**{18}** The State further argues that Defendant also knew he was exposing himself to a total of forty-two years of potential incarceration based on the handwritten "42 year exposure" clause in the agreement. However, according to Defendant, the State was not aware that the sentences totaled forty-two years rather than forty and that he "did the math" himself. When he discovered that the basic sentences could total forty-two years instead of forty, he insisted that the district attorney "do something with that two years before [he] went in front of the judge" because he "would not take" the additional two years. He told the State to "make [the sentence] equal 40," and the State responded by offering to "run it two years with parole." The confusing handwritten "42 year exposure" clause in the plea agreement was thus the result of Defendant's insistence to make the maximum time he could ever serve in prison be forty years. Therefore, at least from Defendant's perspective, the handwritten clause certainly could not have been intended to represent his agreement to face up to forty-two years incarceration total if he were to ever violate probation.

**{19}** The State claimed at oral argument that the "42 year exposure" clause was only intended to indicate that at least two years of the forty-two year sentence would be suspended, and that Defendant got an even better deal by getting nine years suspended. However, even if that was the State's intent, the language does not reflect that intent, as it refers to concurrence, not suspension.

**{20}** It is unclear to us exactly what the handwritten clause explicitly required the court to do, since the court does not have the authority to run a sentence concurrently with parole. *See* § 31-18-15(D) (requiring that when a court suspends or defers a sentence, "the period of parole shall be served in accordance with the provisions of Section 31-21-10 NMSA 1978 for the degree of felony for the basic sentence for which the inmate was convicted"); NMSA

6

1978, § 31-21-10(D) (2009) (requiring a two-year period of parole for second and third-degree felony convictions).

**{21}** This confusing handwritten clause that contains a promise that could not be fulfilled, coupled with the promise of a ten- to forty-year "sentence," render the language in the plea agreement ambiguous. Defendant's understanding that the language promised he would receive a sentence between ten and forty years is not unreasonable since he cannot be expected to understand the sentencing laws unless their repercussions were clear in the agreement. Both the ten- to forty-year maximum "sentence" and the handwritten clause demanded clarification that did not occur anywhere in the language of the plea agreement. Thus, we next turn to whether the district court clarified these issues prior to sentencing Defendant.

**B.      Since the District Court Failed to Resolve the Ambiguity Prior to Sentencing, We Construe the Plea Agreement in Favor of Defendant's Reasonable Interpretation**

**{22}** The State concedes that the plea agreement was not "artfully crafted." However, it argues that even if the plea agreement was ambiguous, the district court resolved the ambiguity prior to sentencing by making its interpretation known to Defendant. The State compares this case to our decision in *Mares* to support its conclusion that the district court in this case resolved any ambiguity in the sentencing terms of the plea agreement. *Mares* involved a similar dispute over a plea agreement that contained a sentencing provision of nine years' imprisonment with the requirement that the sentence "be suspended such that there shall be no more than 24 months of potential actual incarceration ordered." 1994-NMSC-123, ¶ 2. This Court determined that the language in the agreement was ambiguous as to whether the maximum of twenty-four months' incarceration was limited to the initial sentencing or if it covered post-sentencing procedures as well. *Id.* ¶ 13. However, this Court observed that the district court resolved this facial ambiguity several times when it expressly warned Mares that the cap applied only to the initial period of incarceration and that he would face nine years' incarceration total if he ever violated any conditions of probation. *Id.* Mares appealed his sentence when the court subsequently sentenced him to the full nine-year term of incarceration for violating his probation, arguing that his sentence should have been capped at twenty-four months. This Court rejected his argument since the district court's warnings rendered Mares' understanding unreasonable. *Id.* ¶ 19.

**{23}** The State's reliance on *Mares* is misplaced. In this case, Defendant's plea agreement contained similarly ambiguous language as in *Mares* regarding the period of incarceration. However, unlike in *Mares*, here the district court never clarified the actual number of years Defendant faced if he violated probation. The State argues that the agreement's warning that Defendant could be incarcerated for the balance of the sentence if he ever violated probation and the court's warning that he could "face additional consequences in the future" resolved the ambiguity. We disagree. These warnings lack the specificity that was present in *Mares*. They did not resolve the ambiguity regarding whether the sentence cap was forty or forty-

7

two years. Since Defendant reasonably understood that he faced no more than forty years even if he violated probation, to him the "additional consequences" were limited to the amount of time suspended between ten and forty years.

**{24}** The State also implies that the district court made Defendant aware he faced a forty-two-year basic sentence when it advised Defendant of the basic sentences for each count, arguing that the district court advised Defendant "of all the direct sentencing consequences." However, the record reflects that when the court discussed the sentence for each count, it stated that for the second-degree felony offenses: "each of those counts carry with them a basic sentence of *up to* [9] years in prison" and that "the third-degree felony offenses carry basic sentences of *up to* three years in prison." (Emphasis added). Informing Defendant that he could face "up to" the basic sentence does not equate to informing him that he would be receiving the basic sentence.

**{25}** Similarly, the district court never clarified the forty-two-year exposure language. Defendant thought that the language was assuring that he would *not* be sentenced to the basic sentence. The court never explained its contrary interpretation of this language; it merely read it aloud. Later, at the presentment hearing on February 10, 2010, the district court ultimately determined after reviewing the plea agreement that it contemplated that Defendant would be sentenced to "40 years and two years parole" but that the court actually had given Defendant a better deal by suspending nine years. However, since the court never explained these contrary interpretations of this facially ambiguous clause prior to sentencing Defendant, the court failed to resolve the ambiguity in the agreement.

**{26}** It remains unclear to us exactly what the parties intended the ambiguous handwritten language in the plea agreement to require. After all, the parties and the court were still in disagreement over the intended meaning of the language even at the February 10th presentment hearing ordered by the Court of Appeals. It is clear, however, that the parties' conflicting interpretations were not resolved before Defendant was sentenced. The State asserted at oral argument that the "at initial sentencing" language in the plea agreement is "a term of art" and "everyone basically agrees" that it refers to the initial period of incarceration that would be ordered on an imposed sentence. However, Defendant clearly was not in agreement with this purported understanding, and we will not impute this understanding onto Defendant unless it was explained to him. Having never received a contrary explanation, it was reasonable for him to conclude that the maximum forty-year "sentence" indicated that the most time he could ever spend incarcerated for the pleaded charges was forty years. Consequently, we resolve the ambiguity in favor of Defendant's reasonable interpretation.

**{27}** As the sentence stands, the court suspended nine years of a forty-two-year sentence. The suspended years are conditioned on Defendant not violating any part of the judgment. Although it is speculative whether he will violate any conditions, it is conceivable that a court could impose the entire nine years suspended portion of his sentence, resulting in a total prison term of forty-two years. This is two years more than Defendant reasonably

8

believed he was accepting. Accordingly, we affirm the Court of Appeals' decision that this sentence must be vacated.

**C.      The Appropriate Remedy in This Case Is for Defendant to Be Resentenced by the District Court According to His Understanding of the Plea Agreement**

**{28}**    Having determined that Defendant's sentence was not in conformity with the plea agreement, we now determine the appropriate remedy. "[T]he type of plea agreement dictates whether the court is bound to impose the sentence disposition contained in the plea." *State v. Pieri*, 2009-NMSC-019, ¶ 30, 146 N.M. 155, 207 P.3d 1132. When a district court accepts a plea agreement that merely contains a recommended sentence, "the court is not bound by the sentencing recommendations or requests of the parties" and it is the court's responsibility to determine and impose the proper sentence. *Id.* If, however, the district court has accepted a plea agreement for a guaranteed specific sentence, "the court is bound to impose the sentence disposition contained in the plea." *Id.* These principles are codified in our Rule 5-304(C) NMRA, which provides that:

> If the court accepts a plea agreement that was made in exchange for a guaranteed, specific sentence, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement. If the court accepts a plea agreement that was not made in exchange for a guaranteed, specific sentence, the court may inform the defendant that it will embody in the judgment and sentence the disposition recommended or requested in the plea agreement or that the court's judgment and sentence will embody a different disposition as authorized by law.

**{29}**    In *Pieri* we adopted the approach taken by the United States Supreme Court in *Santobello v. New York*, 404 U.S. 257 (1971), when an accepted plea agreement has been violated. 2009-NMSC-019, ¶¶ 14-18. In *Santobello*, the state and the defendant entered into a plea agreement that required the state to refrain from recommending a sentence. 404 U.S. at 258. The state subsequently recommended the maximum sentence at the sentencing hearing. *Id.* at 259. Over the defendant's objection to the state's violation, the court sentenced the defendant to the maximum sentence. *Id.* at 259-60. In doing so, the court stated that it was uninfluenced by the state's recommendation. *Id.* at 259. The Supreme Court nonetheless reversed the sentence due to the state's violation. *Id.* at 263. While Santobello's requested relief was the withdrawal of his guilty plea, the Court determined that the state district court was "in a better position to decide whether the circumstances" of the case required specific performance of the plea, which would require the defendant to be sentenced by a different judge, or whether the defendant should be given the opportunity to withdraw his plea. *Id.*

**{30}**    In *Pieri*, the state and Pieri entered into a plea agreement in which the state promised not to oppose Pieri's request for a suspended sentence. 2009-NMSC-019, ¶ 2. The state then subsequently opposed such a request at the sentencing hearing. *Id.* ¶ 3. This Court held "that

under *Santobello* Defendant should have been given the opportunity to withdraw her plea or receive specific performance of the plea agreement" and "remand[ed] to the district court to afford Defendant this opportunity." *Id.* ¶ 5.

**{31}** The primary distinction between those cases and this case is that they involved recommended sentences, whereas in this case, the sentence was specific and guaranteed. Moreover, the ambiguity in the instant plea agreement, which we resolve in favor of Defendant's reasonable understanding, led the district court to incorrectly impose a sentence that it mistakenly believed had been agreed to by the parties. In fact, it was actually sentencing beyond the forty year maximum period of incarceration that the Defendant understood he bargained for. We hold that because the district court thought it was imposing a guaranteed, specific sentence, when in fact the plea agreement was ambiguous on that point, specific performance of the now unambiguous agreement is the appropriate remedy. Accordingly, we reverse the Court of Appeals' remand order that gives Defendant the option to either withdraw his guilty and no contest pleas or to be sentenced according to his understanding of the terms if the State agrees. *See Miller*, 2012-NMCA-051, ¶ 28. We remand to the district court and order that it shall inform Defendant that it will embody in the judgment and sentence the disposition provided for in the now unambiguous plea agreement.

**D.      We Disavow Any Language in *Pieri* That Is Inconsistent With This Opinion**

**{32}** At oral argument, Defendant argued that denying him the opportunity to withdraw his pleas would conflict with our holding in *Pieri*. The State also conceded that under its understanding of *Pieri* Defendant had that right unless this Court changed the law. The Court of Appeals likewise interpreted *Pieri* to entitle Defendant to withdraw his pleas. *Miller*, 2012-NMCA-051, ¶ 28. Thus, we now explain why *Pieri* does not afford Defendant the automatic right to withdraw his pleas.

**{33}** In *Pieri*, we held "that a court is not required to afford a defendant the opportunity to withdraw his or her plea when it rejects a sentencing recommendation or a defendant's unopposed sentencing request, so long as the defendant has been informed that the sentencing recommendation or request is not binding upon the court." 2009-NMSC-019, ¶ 1, *overruling Eller v. State*, 1978-NMSC-064, 92 N.M. 52, 582 P.2d 824.

**{34}** Defendant's argument that he is entitled to withdraw his guilty plea because the district court did not impose the sentence contained in the plea agreement relies on dicta in *Pieri* that we hereby disavow. In *Pieri*, we intended to compare our holding regarding when a defendant does *not* get to withdraw his or her plea to when a defendant *does* get the opportunity to withdraw a plea under Rule 5-304(D). *See Pieri*, 2009-NMSC-019, ¶ 33 ("We adhere to the requirement of Rule 5-304(D) that if the court accepts a defendant's plea in exchange for a guaranteed, specific sentence and that sentence is not imposed, the court must give the defendant an opportunity to withdraw his or her plea."). However, since it was unnecessary to explain when a defendant *does* have the automatic right to withdraw a plea,

10

the reference to Rule 5-304(D) is dicta and cannot therefore be presently relied upon by Defendant. As we have explained, once a court has accepted a plea agreement, it is bound by the dictates of due process to enforce the agreement. It has no authority to later *reject* the agreement. Because the misstatement regarding Rule 5-304(D) is an inaccurate reflection of the requirement in the rule, it should not be relied upon in this or any future case.

**E.      Sentences Must Comply With Both Our Sentencing Laws and an Accepted Plea Agreement**

**{35}**      Finally, the State argues that the Court of Appeals erred in declining to consider whether the court that approves a plea agreement must honor the plea agreement even if it contains an illegal sentence. The Court of Appeals refused to decide "whether the district court erred in determining that our sentencing laws require the imposition of a basic sentence of forty two years" because the parties did not raise the issue. *Miller*, 2012-NMCA-051, ¶ 16. Rather, it determined that "it was the plea agreement, not the sentencing statutes, which the district court was bound to enforce." *Id.* We agree with the State that a sentencing court must ensure that a sentence complies with both the terms of an accepted plea agreement and our sentencing laws.

**{36}**      The Court of Appeals correctly considered the ruling in *Gomez* that "[o]nce the plea is accepted, the court is bound by the dictates of due process to honor the agreement and is barred from imposing a sentence that is outside the parameters set by the plea agreement." *See id.* (quoting *Gomez*, 2011-NMCA-120, ¶ 16). However, as the State argues, the court must also be mindful of our sentencing statutes and cannot impose an illegal sentence. *See* § 31-18-15(B) ("The appropriate basic sentence of imprisonment *shall be imposed* . . . unless the court alters the sentence pursuant to the provisions of the Criminal Sentencing Act." (emphasis added)); *Mares*, 1994-NMSC-123, ¶ 10 (holding that a district court can only impose sentences authorized by law); *see also Sneed v. Cox*, 1964-NMSC-250, ¶ 8, 74 N.M. 659, 397 P.2d 308 ("[S]entences which are unauthorized by law are null and void."); *State v. Lucero*, 1944-NMSC-036, ¶¶ 17-18, 48 N.M. 294, 150 P.2d 119 (determining that legal sentences must be supported by statutory authority; illegal sentences are void). If the sentence in an accepted plea agreement is illegal, and therefore cannot be imposed by a court, then the court must give the defendant the opportunity to withdraw the plea. *Sisneros*, 1982-NMSC-068, ¶ 8 (reversing the Court of Appeals' reinstatement of an illegal sentence and ordering that the correct remedy was to permit the defendant to withdraw his plea).

**{37}**      Thus, when Defendant is re-sentenced upon remand, the sentence must honor both Defendant's understanding of the plea agreement and our sentencing laws. Although Defendant's understanding that two years of the forty-two-year sentence be run concurrent with parole cannot be honored, there are several ways to ensure that the sentence adheres to his understanding that he would face no more than forty years of incarceration for the pleaded charges. Accordingly, we offer two sentencing options to the district court.

**{38}**      First, the court can consider running concurrently any one of the sentences it must

11

impose. We recognize that the plea agreement dictates that the sentences be run consecutively, but this requirement conflicts with the handwritten language that contemplates running part of the sentence concurrent with parole. Since we are presented with two conflicting provisions, we conclude that to harmonize both provisions, the forty-year cap must be seen as a cap on what can be run consecutively. Alternatively, the court could adjust the statutorily required basic sentence by up to one-third upon the finding of mitigating factors justifying the reduction—perhaps Defendant's willingness to plead guilty.

## IV.    CONCLUSION

**{39}**    This case demonstrates why it is essential that a district court clarify any ambiguity in a plea agreement, including those related to sentencing provisions, before it decides whether to accept or reject the plea agreement. If the district court does not resolve the ambiguity, the language in the plea agreement will be construed in favor of a defendant's reasonable understanding. Once a court has accepted a plea agreement, it must ensure that the promises contained in the agreement are fulfilled. If the agreement contains a guaranteed, specific sentence, the court is bound by the dictates of due process to impose that sentence.

**{40}**    Since the district court in this case failed to resolve the ambiguity in the plea agreement that it accepted, we construe the agreement in favor of Defendant's reasonable understanding that he would spend no more than forty years incarcerated. We therefore affirm the Court of Appeals' conclusion that Defendant's sentence violates his plea agreement, but we reverse its remand order and remand this matter to the Court of Appeals for resolution of Defendant's remaining issues.

**{41}    IT IS SO ORDERED**.


_____

**BARBARA J. VIGIL, Justice**


**WE CONCUR:**


_____

**PETRA JIMENEZ MAES, Chief Justice**


_____

**RICHARD C. BOSSON, Justice**


_____

**EDWARD L. CHÁVEZ, Justice**


_____

**CHARLES W. DANIELS, Justice**

**Topic Index for *State v. Miller*, No. 33,571**

**APPEAL AND ERROR**
Remand
Standard of Review
State's Right to Appeal

**CONTRACTS**
Ambiguous Contracts

**CRIMINAL LAW**
Fraud

**CRIMNAL PROCEDURE**
Aggravating or Mitigating Circumstances
Plea and Plea Bargaining
Sentencing

**JUDGES**
Abuse of Discretion