IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2015-NMSC-030

Filing Date: September 10, 2015

Docket No. 34,411

STATE OF NEW MEXICO,

Plaintiff-Appellee,

v.

DONOVAN KING,

Defendant-Appellant.

APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY
John A. Dean, Jr. District Judge

Jorge A. Alvarado, Chief Public Defender
J.K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Hector H. Balderas, Attorney General
Kenneth H. Stalter, Assistant Attorney General
Santa Fe, NM

for Appellee

OPINION

BOSSON, Justice.

{1}     Relying on *Santobello v. New York*, 404 U.S. 257 (1971), this Court has previously held that a plea-bargained sentence must be fulfilled by the prosecution, and if not, will be enforced by the courts. *See State v. Miller*, 2013-NMSC-048, ¶¶ 29, 31, 314 P.3d 655. In this first-degree murder appeal, we apply that principle of law to a prosecutorial promise to dismiss a tampering-with-evidence charge if the accused would locate and produce the murder weapon. Here, Defendant Donovan King produced the weapon, but the prosecutor did not drop the charge as promised and Defendant was convicted of tampering with

1

evidence. Accordingly, we reverse the tampering conviction. Affirming all remaining convictions, including first-degree murder, we remand for resentencing.

## BACKGROUND

**{2}** Defendant and Justin Mark arrived at Kevin Lossiah's apartment the morning of May 29, 2011. Initially, Lossiah's neighbors saw Defendant and Mark outside Lossiah's apartment. Neighbor Wesley Gray talked to Defendant briefly before returning to his apartment. Moments later Gray and his wife Nicole Beyale heard banging coming from Lossiah's apartment and someone yelling "Please stop! Shut up!" Beyale immediately called the police, who were dispatched to the apartment and found Lossiah severely beaten but still breathing. Officers called for paramedics and Lossiah was rushed to the hospital.

**{3}** Farmington police officers, having the descriptions of both Defendant and Mark, began canvassing the area. Shortly after the incident, Detective Paul Martinez and Officer Frank Dart came into contact with Mark and Defendant. Detective Martinez testified that Mark was shirtless and had fresh scratches on his back, and that the clothing on both men was wet and muddy. Detective Martinez also testified that both individuals looked like they had been involved in a struggle. DNA testing later revealed Lossiah's blood on their clothing. While being questioned by Officer Dart, Defendant stated that Lossiah "came at him with a sword." Both Mark and Defendant were arrested and taken to the Farmington Police Department. Lossiah died later that night.

**{4}** Ultimately, Defendant was charged with and convicted of first-degree murder, conspiracy to commit first-degree murder, armed robbery, conspiracy to commit armed robbery, and tampering with evidence. The district court sentenced Defendant to life imprisonment plus 18 years. Recently this Court upheld Mark's conviction for first-degree murder for his participation in Lossiah's murder. *See State v. Mark*, No. 34,025, dec., ¶¶ 1, 48 (N.M. Sup. Ct. Apr. 13, 2015) (non-precedential). Defendant appeals directly to this Court. *See* Rule12-102(A)(1) NMRA.

## DISCUSSION

**{5}** On direct appeal to this Court, Defendant raises five issues. The principal issue is whether the prosecutor made a promise to Defendant to dismiss one of the charges if Defendant would locate and turn over the murder weapon. If such a promise was made, we must decide the appropriate remedy, if any. To establish necessary context, we begin with Defendant's custodial interrogations.

**{6}** Officers questioned Defendant on May 29, 2011, the day of the arrest, and again on May 30, 2011. This Court previously upheld the district court's determination that Defendant's interrogation on May 29, 2011, violated Defendant's constitutional rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), making Defendant's incriminating statements from that interview inadmissible at trial. *State v. King*, 2013-NMSC-014, ¶¶ 1-2, 13, 300

2

P.3d 732. When Detective Martinez questioned Defendant the next day, he properly advised Defendant of his *Miranda* rights and Defendant signed a waiver, consenting to questioning without an attorney.

**{7}** After being advised of his *Miranda* rights, Defendant asked the detective for his paperwork. Defendant indicated that he did not want to talk about the events of the previous day because he wanted to speak to his family first.[1] Detective Martinez asked Defendant if there was anything he did want to talk about, to which Defendant replied "[t]hat's why I asked [you] to bring the papers." Defendant then indicated that he would like to see some charges dropped. The following exchange took place:

> **Detective Martinez:** Well, what would you like to see dropped and why?
>
> **Donovan King**: The tampering with evidence.
>
> **Detective Martinez:** And how would you like that one to get dropped?
>
> **Donovan King**: If I show you personally what I did with what I had?
>
> **Detective Martinez:** Look, I can't make that promise, but if you . . . tell me now where you [put it] I can talk to the [district attorney] but I cannot make you a promise. But I can tell you that if you cooperate and tell me where everything you guys did and where it went well, yeah, that's going to help in the tampering because then it would no longer have, . . . I'm sure the [district attorney] would be willing to work with us.

**{8}** During the discussion, Defendant admitted that he and Mark had taken a wooden branch into Lossiah's apartment and that Defendant later hid it. This branch is what Defendant was referring to when he offered to show the detective "what I did with what I had" if the tampering charge was dropped. The tampering charge was based on Defendant having hidden the branch.

**{9}** Because Detective Martinez did not have the authority to drop the charge, he called his supervisor. After the supervisor returned Detective Martinez's telephone call, the detective had this exchange with Defendant:

---

[1]Defendant sought to suppress the statements and any physical evidence that resulted from the second interview. The district court found that the second interview did not include a valid waiver of Defendant's right against self-incrimination because of Defendant's stated reluctance to speak with the detective before talking with his family. The court, however, also found that the statements were voluntarily given. Consistent with the *U.S. v. Patane*, 542 U.S. 630 (2004) standard, the district court held that the physical fruits of those statements—in this case the murder weapon—could be admitted at trial.

**Detective Martinez**: Here is what I was told word for word. We just talked with the district attorney that is actually charging you. The district attorney is willing to talk dismissal of the charge of tampering if we go today and actually find the weapon where you hid it. Is that what you want to do?

**Donovan King**: Yeah.

**Detective Martinez:** Okay, let me make arrangements and I got somebody meeting us and we will go right now.

Defendant then went with the officers to the location of the wooden branch Defendant had hidden. At trial the prosecution used the branch as evidence of a murder weapon.

**{10}** The exchange between Defendant and Detective Martinez is significant because the assistant district attorney, speaking through Detective Martinez, appears to have promised to dismiss the tampering charge in exchange for Defendant locating the murder weapon. Yet, Defendant was in fact charged with and convicted of that same tampering charge pertaining to that same branch. Based on this exchange, we requested supplemental briefing to address the voluntariness of Defendant's statements and subsequent production of the branch in reliance on a promise of leniency—dismissal of the tampering charge.

**{11}** Normally, we would analyze custodial statements made to a police officer in reliance on a promise of leniency in terms of whether the individual's "'will has been overborne and his capacity for self-determination critically impaired.'" *State v. Munoz*, 1998-NMSC-048, ¶ 20, 126 N.M. 535, 972 P.2d 847 (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961)). The analysis differs, however, when examining a plea agreement entered into with a prosecutor. *See Miller*, 2013-NMSC-048, ¶ 9. ("Upon review, appellate courts construe the terms of the plea agreement according to what Defendant reasonably understood when he entered the plea." (internal alteration omitted) (internal quotation marks and citation omitted)). The distinction exists in part because "[t]he police have no authority to make prosecutorial decisions." *State v. Reed*, 879 P.2d 1000, 1002 (Wash. Ct. App. 1994). The district attorney obviously does have such authority.

**{12}** Notably, this appeal presents a kind of hybrid of custodial statements made to a police officer and a plea agreement negotiated with a prosecutor. Defendant only talked with Detective Martinez. However, the level of participation by the prosecutor is significant and cannot be overlooked. In the initial discussion with Defendant, Detective Martinez was very careful not to promise dismissal because he had no authority to make such an offer ("Look, I can't make that promise, but . . . ."). But the prosecutor did have the authority, which appears to be exactly why the detective then conferred with the one person who could "make that promise": "the district attorney that is actually charging you."

**{13}** After talking directly with the prosecutor, Detective Martinez, acting as a kind of proxy, relayed the prosecutor's offer—not the detective's offer—that the prosecutor would

4

dismiss the tampering charge if Defendant showed the police where the tampered-with evidence—the hidden murder weapon—was located. Importantly, there is no claim here that the detective misunderstood or misrepresented the prosecutor's offer. At the suppression hearing, the same prosecutor who made the offer played the audio interview between Detective Martinez and Defendant without any contradiction, objection, or claim of inaccuracy.

{14}    The fundamental problem is not the officer's willingness to participate in the discussion Defendant initiated, but the prosecutor's failure to follow through on his offer. Had the prosecutor dismissed the tampering charge, Defendant would be in no position to complain about having given the statement or produced the murder weapon; he would have received the benefit of his bargain. Thus, it is the level of participation by the prosecutor that places this case into the realm of a plea agreement. As such, "[w]e examine the language in the plea agreement to evaluate the reasonableness of *Defendant's understanding*." *Miller*, 2013-NMSC-048, ¶ 16 (emphasis added).

{15}    A literal, finely-parsed reading of the exchange might suggest that the prosecutor promised only to "talk dismissal" of the tampering charge, but not necessarily to dismiss the charge. The State makes such a claim on appeal. A fair reading of this exchange, however, leads ineluctably to a different conclusion. If Defendant showed the branch to Detective Martinez, then the tampering charge really would be dismissed; they would not just "talk" about it. Clearly, that is what Defendant believed and reasonably so. Why else would he locate the branch for Detective Martinez if not in reliance on such an agreement? Defendant performed on his promise; the prosecutor did not. Accordingly, we must consider the appropriate remedy for the prosecutor's unfulfilled promise.

**Specific performance is the appropriate remedy for an unfulfilled promise made by the prosecutor in the context of this case**

{16}    *Santobello*, 404 U.S. 257, provides a helpful framework for this issue. In *Santobello*, the prosecutor permitted the accused to plead guilty to a lesser-included offense and agreed not to recommend any sentence to the court. *Id.* at 258. After a series of delays, a new prosecutor who took over the case failed to adhere to the original plea agreement and recommended the maximum sentence, which the defendant received. *Id.* at 259. The U.S. Supreme Court reversed, saying that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262. Declining to decide categorically how that promise should be enforced, the Court remanded, stating "[t]he ultimate relief to which petitioner is entitled we leave to the discretion of the state court" because the state court is in a better position to choose the remedy. *Id.* at 263. The Court did suggest specific performance of the original plea agreement as one alternative. *Id.*

{17}    Citing *Santobello*, this Court granted specific performance in *Miller*, 2013-NMSC-048, ¶¶ 30-31, as a proper remedy for a broken plea agreement. In *Miller*, the defendant and

the prosecutor had agreed that the defendant would receive a maximum sentence of forty years. *Id.* ¶ 3. The district court then proceeded to sentence the defendant to forty-two years and suspended nine years of the sentence. *Id.* ¶ 4. This Court held "that the forty-two-year sentence violate[d] the plea agreement." *Id.* ¶ 8. We remanded the case to the district court "to sentence [the defendant] according to his reasonable understanding of the plea agreement, requiring that his sentence contain a total period of incarceration between ten and forty years." *Id.*

**{18}** In the present case, Defendant voluntarily presented a potential plea agreement to the State, saying essentially: "If you dismiss the tampering charge, I will find the branch." While the deal may not have been in Defendant's best interest, it is the deal he freely proposed; it was not coerced or extracted unfairly. The prosecutor's response, through Detective Martinez and his conduct thereafter, led Defendant reasonably to understand that they had an agreement. There was no apparent reason for the prosecutor not to keep his end of the bargain. We strongly favor the language from *Santobello* quoted earlier that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*, 404 U.S. at 262. *See State v. Unga*, 196 P.3d 645, 651 (Wash. 2008) (en banc) (charge dismissed when confession was based on a promise not to prosecute for that crime; other charges were upheld).

**{19}** In the interest of fundamental fairness, we conclude that Defendant is entitled to specific performance of the agreement he made with the prosecutor. As a result, we vacate Defendant's tampering with evidence conviction and remand for resentencing. We continue with the remaining issues Defendant raises on appeal.

**Defendant was on notice that he could be convicted as an accessory even though he was only charged as a principal**

**{20}** Defendant failed to preserve his challenge to the jury instruction on accessory liability, which we now review for fundamental error. *See* Rule 12-216(B)(2) NMRA (providing that an appellate court may review, "in its discretion, [unpreserved] questions involving . . . fundamental error"). Fundamental error "'must go to the foundation of the case or take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive.'" *State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 (quoting *State v. Garcia*, 1942-NMSC-030, ¶ 25, 46 N.M. 302, 128 P.2d 459). "The exacting standard of review for reversal for fundamental error requires the question of guilt be so doubtful that it would shock the conscience of the court to permit the verdict to stand." *State v. Samora*, 2013-NMSC-038, ¶ 17, 307 P.3d 328 (internal alterations omitted) (internal quotation marks and citation omitted). Defendant claims for the first time that "[i]nstructing the jury on accessory liability when the State failed to charge [Defendant] at any point with accessory liability deprived [Defendant] of his fundamental rights to notice of the charges against him and the opportunity to prepare a defense." We are not persuaded.

6

**{21}** Defendant is correct that the State did not initially charge Defendant with accessory liability. However, New Mexico long ago abolished the distinction between accessory and principal liability. *See State v. Wall*, 1980-NMSC-034, ¶ 10, 94 N.M. 169, 608 P.2d 145 ("The Legislature and our courts have abolished the distinction between a principal and an accessory."), *overruled on other grounds by State v. Lucero*, 1993-NMSC-064, ¶ 13, 116 N.M. 450, 863 P.2d 1071. *See also State v. Nance*, 1966-NMSC-207, ¶ 18, 77 N.M. 39, 419 P.2d 242 ("The purpose of the [L]egislature to authorize charging and convicting an accessory as a principal is made evident when we consider that no different penalty is provided by law for one who aids and abets."), *abrogated on other grounds by State v. Wilson*, 2011-NMSC-001, ¶¶ 14-15, 149 N.M. 273, 248 P.3d 315; *Tapia v. Tansy*, 926 F.2d 1554, 1561 (10th Cir. 1991) ("New Mexico, like many other states, long ago abolished the distinction between conviction as a principal and an accessory, so that the charge as principal includes a corresponding accessory charge."). The charge against Defendant as a principal included "a corresponding accessory charge," assuming the evidence at trial supported the charge. Accordingly, Defendant "was on notice that he could be charged as a principal and convicted as an accessory or vice-a-versa." *See Wall*, 1980-NMSC-034, ¶ 10. After Defendant was charged as a principal, the district court correctly instructed the jury on accessory liability.

**Defendant's statements were hearsay not falling within any recognized exception**

**{22}** Defendant, in reliance on his Fifth Amendment privilege against compelled self-incrimination, declined to testify at trial. Defense counsel, trying to lay an evidentiary foundation for Defendant's claim of self-defense, sought to question Officer Dart about certain statements Defendant had made to him. The State made a hearsay objection. Defense counsel called Officer Dart outside the presence of the jury to make a proffer of evidence. During the proffer, Officer Dart acknowledged being told by Defendant that "Lossiah came at him with a sword." The court granted the State's hearsay objection.

**{23}** Defendant maintains on appeal that his statement to Officer Dart was admissible either as a nonhearsay statement or, in the alternative, as a statement that satisfied one or more exceptions to the hearsay rule. "We review the admission of hearsay evidence for an abuse of discretion." *State v. Sisneros*, 2013-NMSC-049, ¶ 18, 314 P.3d 665. We begin by asking whether Defendant's statement to Officer Dart was hearsay.

**{24}** "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." *Id.*; *see also* Rule 11–801(C) NMRA. Defendant argues that his statement to Officer Dart was not hearsay because it was not offered to prove the truth of the matter asserted—that Lossiah actually threatened Defendant with a sword—but only to show how Defendant felt as a result, his fearful state of mind. Defendant argues that excluding this statement effectively denied him a defense, that he believed he was threatened with a sword and reacted accordingly.

**{25}** This Court has stated: "The purpose of recognizing self-defense as a complete

justification to homicide is the *reasonable belief* in the necessity for the use of deadly force to repel an attack in order to save oneself or another from death or great bodily harm." *State v. Coffin*, 1999-NMSC-038, ¶ 12, 128 N.M. 192, 991 P.2d 477 (emphasis added). We agree with the State's analysis that "[Defendant's] statement only shows a reasonable belief of imminent danger if the statement is true. If the statement is false, then it shows no such thing." Defendant cannot use this statement to demonstrate a *reasonable belief* in the necessity of his use of force for self-defense unless he stated truthfully to Officer Dart that the victim came at him with a sword. Accordingly, the statement in fact was being offered for the truth of the matter stated, and the district court correctly denied its admission.

**{26}** Defendant also argues for various recognized exceptions to the hearsay rule. He first proposes that his statement was admissible under Rule 11-803(3) NMRA as a then-existing mental, emotional or physical condition. This exception to the hearsay rule applies to "[a] statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed." *Id.* "The exception is limited to statements showing the mental state, *not its cause*." *State v. Leyba*, 2012-NMSC-037, ¶ 13, 289 P.3d 1215 (emphasis added).

**{27}** Defendant's statement that "Lossiah came at him with a sword" does not show Defendant's mental state, only its cause. This Court has held that "the rule does not permit evidence explaining why the declarant held a particular state of mind." *State v. Baca*, 1995-NMSC-045, ¶ 19, 120 N.M. 383, 902 P.2d 65. Even if Defendant had told the officer that he was afraid because of Lossiah's conduct, that would not have been his state of mind at the time he made the out-of-court statement, only his previous state of mind at the time of the alleged incident. Therefore, the district court did not abuse its discretion by rejecting Defendant's statement under Rule 11-803(3).

**{28}** Defendant next argues for the first time on appeal that this was an exception to hearsay as a statement against interest under Rule 11-804(B)(3) NMRA. We review for plain error. *See Lucero*, 1993-NMSC-064, ¶ 13 ("To establish plain error, the error complained of must have affected substantial rights although the plain errors were not brought to the attention of the judge." (internal alterations omitted) (internal quotation marks and citation omitted)). Defendant first must show he is unavailable to testify to meet any exception under Rule 11-804. Rule 11-804(A)(1) states that a declarant is unavailable if he "is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies." Here, Defendant chose to exercise his Fifth Amendment privilege against compulsory self-incrimination. By doing so, he made himself unavailable to the State, but he remained free to change his mind and testify. *See United States v. Peterson*, 100 F.3d 7, 13 (2d Cir. 1996) ("When the defendant invokes his Fifth Amendment privilege, he has made himself unavailable to any other party, but he is not unavailable to himself."). *See also United States v. Kimball*, 15 F.3d 54, 56 (5th Cir. 1994) (holding that a declarant cannot cause his own unavailability by invoking his Fifth Amendment privilege against self-incrimination); *United States v. Hughes*, 535 F.3d 880, 882 (8th Cir. 2008).

8

**{29}** Defendant was not unavailable as contemplated by Rule 11-804(A)(1). Even if Defendant were unavailable, however, his claim still fails under Rule 11-804(B)(3). A statement against interest is defined as a "statement . . . so far contrary to the declarant's penal interest that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." *State v. Torres*, 1998-NMSC-052, ¶ 14, 126 N.M. 477, 971 P.2d 1267 (internal quotation marks and citation omitted), *overruled by State v. Alvarez-Lopez*, 2004-NMSC-030, ¶¶ 17, 23, 136 N.M. 309, 98 P.3d 699 (overruling *Torres* "to the extent [that *Torres*] held custodial confessions implicating the accused fall with a firmly rooted hearsay exception and do not violate the federal Confrontation Clause"). The advisory committee's note to Fed. R. Evid. 804(b)(3) states that "a statement admitting guilt and implicating another person, made while in custody, may well be motivated by a desire to curry favor with the authorities and hence fail to qualify as against interest." Fed. R. Evid. 804(b)(3) advisory committee's note to 1972 amendment.

**{30}** Defendant argues that since his statement ("Lossiah came at [me] with a sword") exposed him to criminal liability, it was "an inculpatory statement with an aspect of self-defense." We disagree. Defendant gave the statement to Officer Dart when he was covered in Lossiah's blood and had Lossiah's possessions on his person. While this statement did not implicate another person, it could well have been "motivated by a desire to curry favor" with Officer Dart and explain his actions. The statement was not "so far contrary" to Defendant's penal interest. It actually was in Defendant's interest to make the statement. The district court correctly rejected Defendant's argument under Rule 11-804(B)(3).

**{31}** Defendant also argues for the first time on appeal that the statement should fall under Rule 11-807 NMRA. Again we review for plain error. This hearsay exception is available if

> (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice.

Rule 11-807(A). This Court has observed that "[t]his exception is to be used sparingly, however, especially in criminal cases." *Leyba*, 2012-NMSC-037, ¶ 20. "The test under the catch-all rules is whether the out-of-court statement—not the witness's testimony—has circumstantial guarantees of trustworthiness." *State v. Trujillo*, 2002-NMSC-005, ¶ 17, 131 N.M. 709, 42 P.3d 814.

**{32}** Defendant made no effort at trial to demonstrate that his statement shows "indicia of trustworthiness equivalent to those other specific exceptions." *Leyba*, 2012-NMSC-037, ¶ 20 (internal quotation marks and citation omitted). Defendant made the statement two hours after the incident took place while he had Lossiah's blood on his clothes. He was offering the officer self-serving testimony to mitigate or explain his actions. Moreover, Defendant

failed to comply with Rule 11-807(B) that "[t]he statement is admissible only if, before the trial or hearing, the proponent gives an adverse party reasonable notice of the intent to offer the statement and its particulars . . . so that the party has a fair opportunity to meet it." Therefore, we hold that it was not plain error for the district court to deny admission of Defendant's statements under Rule 11-807.

**Ineffective assistance of counsel**

**{33}** Defendant argues that he received ineffective assistance of counsel. This Court has repeatedly stated that ineffective assistance of counsel claims are best served through habeas corpus proceedings so that an evidentiary hearing can take place on the record. *See State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d 776 ("A record on appeal that provides a basis for remanding to the trial court for an evidentiary hearing on ineffective assistance of counsel is rare. Ordinarily, such claims are heard on petition for writ of habeas corpus."). *See also State v. Telles*, 1999-NMCA-013, ¶ 25, 126 N.M. 593, 973 P.2d 845 ("[The] proper avenue of relief [from ineffective assistance of counsel] is a post-conviction proceeding that can develop a proper record."). Generally, only an evidentiary hearing can provide a court with sufficient information to make an informed determination about the effectiveness of counsel. Accordingly, we reject Defendant's ineffective assistance of counsel claim on appeal without prejudice to his ability to bring such a claim by way of habeas corpus.

**{34}** Because we have vacated Defendant's conviction of tampering while concluding that three other issues he raises are without merit, the fifth issue in which Defendant claims cumulative error is moot.

**CONCLUSION**

**{35}** We vacate Defendant's tampering with evidence conviction and remand for resentencing. We affirm Defendant's remaining convictions.

**{36} IT IS SO ORDERED.**

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**BARBARA J. VIGIL, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

10

_____
**EDWARD L. CHÁVEZ, Justice**


_____
**CHARLES W. DANIELS, Justice**