This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **No. 33,810**

**TANYA PACHECO and**
**SONNIE PACHECO,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Ross C. Sanchez, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Tonya Noonan Herring, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Santa Fe, NM
Sergio J. Viscoli, Appellate Defender
Albuquerque, NM

for Appellants

**MEMORANDUM OPINION**

**SUTIN, Judge.**

{1}	In joined district court cases, Tanya Pacheco and Sonnie Pacheco each pleaded guilty to one count of larceny over $500 but not more than $2500, contrary to NMSA 1978, Section 30-16-1 (2006), for having stolen a number of items from Dale Perkins (Victim). Pursuant to the sentencing agreements in Defendants' respective, but nearly identical pleas, the State agreed to a conditional discharge on the condition, among others, that Defendants "pay restitution to [V]ictim . . . in an amount to be determined by probation authorities." After a restitution hearing, the district court ordered Defendants "jointly or severally" to pay a total of $10,628.41 in restitution to Victim.

{2}	On appeal, Defendants seek reversal of the district court's restitution order, arguing that the maximum sum of restitution that the court could order was $2500 each in accord with the larceny charges to which they pleaded guilty. We hold that the district court properly exercised its discretion in issuing its order. We affirm.

**BACKGROUND**

{3}	In this memorandum opinion we assume that the parties are familiar with the relevant facts and background. Accordingly, we provide background and factual details only in our discussion and only to the extent that they are necessary to that discussion.

**DISCUSSION**

**{4}** At the restitution hearing, the district court concluded that pursuant to NMSA 1978, Section 31-17-1(A)(2) (2005), governing victim restitution, the court had authority to award "all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event[.]" *See* § 31-17-1(A)(4) (" '[R]estitution' means full or partial payment of actual damages to a victim."). On appeal, Defendants do not challenge the district court's interpretation of Section 31-17-1, nor do they directly attack the district court's application of the restitution statute to the facts of this case. Instead, Defendants argue that the court was required to limit the restitution amount to $2500 each to comport with Defendants' "reasonable understanding" of the terms of their plea agreements. They argue further that the district court was bound by "the law of the case" doctrine to limit the amount of restitution to $2500 each. For the reasons that follow, Defendants' arguments do not demonstrate grounds for reversal.

**{5}** Defendants argue that, based upon the written plea agreements and the plea colloquies, they reasonably understood that they would pay no more than $2500 in restitution because they pleaded guilty to larceny in an amount between $500 and $2500. They argue further that, to the extent the plea agreement was ambiguous in regard to the amount of restitution they could be ordered to pay, it was incumbent on the district court to clarify the ambiguity before accepting their pleas, but that the

3

court failed to do so. On appeal, they seek remand with instructions to the district court to modify its restitution order to reflect an amount of restitution no greater than $2500 each. Since we affirm, we need not consider the remand issue.[1]

**{6}** A reviewing court "construe[s] the terms of the plea agreement according to what [the d]efendant reasonably understood when he entered the plea." *Miller*, 2013-NMSC-048, ¶ 9 (internal quotation marks and citation omitted). "A plea agreement is a unique form of contract whose terms must be interpreted, understood, and approved by the district court." *Id.* (internal quotation marks and citation omitted). "If the language in the [plea] agreement is ambiguous, it is the district court's task to resolve that ambiguity with the parties[,]" if it does so, "the agreement can no longer be said to be ambiguous[.]" *Id.*

**{7}** Unless the district court ratifies a plea agreement that contains a guaranteed, specific sentence, sentencing determinations are within the court's discretion and are reviewed for an abuse of discretion. *See id.* ¶¶ 11, 28 (recognizing that "[i]f . . . the district court has accepted a plea agreement for a guaranteed[,] specific sentence, the court is bound to impose the sentence disposition contained in the plea" and also

---

[1] We note, however, that where a defendant demonstrates on appeal that the sentence in an accepted plea agreement is illegal or cannot be imposed, the issue is remedied by allowing the defendant to withdraw the plea. *State v. Miller*, 2013-NMSC-048, ¶ 36, 314 P.3d 655.

4

recognizing that if the plea agreement does not contain a guaranteed, specific sentence, the district court's sentence may "embody a . . . disposition as authorized by law" (internal quotation marks and citations omitted)); *State v. Bonilla*, 2000-NMSC-037, ¶ 6, 130 N.M. 1, 15 P.3d 491 ("A trial court's sentencing is reviewed for abuse of discretion."). Ordering restitution is part of the sentencing process. *State v. Lack*, 1982-NMCA-111, ¶ 23, 98 N.M. 500, 650 P.2d 22.

{8}     The terms of the respective plea agreements signed by Defendants provide, under the sentencing agreement heading that each Defendant "shall pay restitution to [V]ictim . . . in an amount to be determined by probation authorities." Ms. Pacheco's plea agreement also contains a handwritten provision regarding restitution stating, "no agreement as to amount owed shall result in a restitution hearing."

{9}     The district court accepted Defendants' pleas at a hearing attended by both Defendants and their respective attorneys. At that hearing, before the district court engaged in a colloquy with Defendants regarding their plea agreements, Ms. Pacheco's attorney advised the court that the amount of restitution was yet to be determined and that in the event that the amount of restitution could not be agreed upon, Ms. Pacheco had reserved the right to have a hearing on that matter. In response to that argument, the district court inquired as to what had been taken from Victim. The prosecutor responded to the court's inquiry as follows, "there was a steel base to

an air compressor. . . . [V]ictim has estimated $6,000 in the metal from shell casings. He's itemized all the shooting stands valued at over . . . $1,000, steel targets valued at $735, targets made from steel additionally listed here, and a Nordictrack machine[.]" Thus, prior to the plea colloquies, the State enumerated at least five stolen items, estimating the combined value of only three of them at $7735.

{10} Owing to the lack of specificity regarding the value of the stolen items, the district court stated that it would like to continue the matter "for about a month" to allow the attorneys to go over the items that were allegedly taken and to agree upon a "maximum amount of restitution" or a "reasonable amount of restitution that may be owed." Ms. Pacheco's attorney agreed with the prosecutor that the plea hearing should proceed as planned, with the matter of the amount of restitution to be resolved at a later-held restitution hearing. Mr. Pacheco's attorney did not object.

{11} In the district court's colloquy with Ms. Pacheco, the court confirmed her understanding that the amount of restitution was yet to be determined. And in the district court's colloquy with Mr. Pacheco, the district court requested the prosecutor to recite, for a second time, what the items were that Defendants had stolen from Victim and the estimated value of those items. The prosecutor recited a list of items and the respective estimated values that, combined, exceeded $5000. The $5000 sum did not include the earlier-mentioned estimated $6000 value of the metal from shell

6

casings. In response to the prosecutor's recitation, and as part of its colloquy with Mr. Pacheco, the district court recommended that the State and Defendants' attorneys meet with an expert to resolve the matter of the value of the stolen items before the restitution hearing.

{12} Following the district court's colloquy with each Defendant, the district court accepted their pleas. The plea hearing concluded with the district court and the attorneys scheduling the restitution hearing and the district court agreeing with the prosecutor's statement that Defendants should be present at the restitution hearing "so they know what kind of money they need to come up with."

{13} Based upon the foregoing, we conclude that Defendants' belief, purportedly derived from their written plea agreements and their plea colloquies, that they would be ordered to pay a maximum of $2500 each in restitution was not a reasonable belief. Defendants' respective plea agreements do not contain any provision limiting the amount of restitution that Defendants would be required to pay as part of their sentencing agreements. Instead, the written agreements provide that Defendants "shall pay restitution . . . in an amount to be determined by probation authorities." Nor was there any indication during the plea hearing that Defendants' restitution would not exceed $2500 each. To the contrary, the question of the sum of restitution was, by agreement of the parties, left open to be resolved at a later-held restitution hearing.

7

Further, the estimated value of the stolen items discussed at the plea hearing ranged from $7735 to around $11,000. Thus, if any reasonable inference regarding the sum of restitution could be drawn from the plea hearing, it was that the amount of restitution would be between $7735 and $11,000.

**{14}** The foregoing facts and circumstances lead us to conclude that Defendants' belief that they would be ordered to pay restitution in an amount not more than $2500 each was not a reasonable belief. The same facts and circumstances also lead us to conclude that the plea agreement was not ambiguous as to whether Defendants' restitution would be limited to $2500 each. Ambiguity arises where a provision in a contract is "reasonably and fairly susceptible to different constructions." *ConocoPhillips Co. v. Lyons*, 2013-NMSC-009, ¶ 23, 299 P.3d 844 (alteration, internal quotation marks, and citation omitted). As noted earlier, Defendants' written plea agreements stated that the restitution amount was yet "to be determined" with no stated limit. In our view, it is not reasonable to construe that provision as limiting the amount of restitution to $2500 or for that matter to any sum.

**{15}** Even were we to assume that the written plea agreements could reasonably be construed as to the amount of restitution to accord with the larceny charge of over $500 but not more than $2500, the ambiguity was resolved at the plea hearing when the district court and the parties expressly agreed that the amount of restitution, which

had been estimated to exceed $5000 ($2500 each) and in fact exceeded $7000, would be determined at a restitution hearing. *See Miller*, 2013-NMSC-048, ¶ 9 (stating that if the district court resolves an ambiguous provision of a plea agreement with the parties, the agreement ceases to be ambiguous). Defendants' assertion that the district court should have questioned them as to whether they wished to plead guilty in light of the fact that the amount of restitution was yet to be determined is contradicted by the record. When the district court stated that it would like to continue the matter of accepting Defendants' plea agreements for one month during which time the matter of restitution could get resolved, and the State presented its argument to move forward with the pleas and hold a separate restitution hearing, Defendants did not object.

{16} Because Defendants' plea agreements did not specify or limit the amount of restitution, the matter of how much restitution Defendants should pay was within the district court's discretion. *See id.* ¶ 11. Based on evidence presented by the State at the restitution hearing demonstrating that the total value of the items that Defendants stole from Victim was $10,628.41, the district court ordered Defendants to pay that sum in restitution to Victim. Given that the ruling was tenable and justified by reason, we cannot say that the district court abused its discretion in that regard. *See State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829; *see also* § 31-17-1(A)(4) (" '[R]estitution' means full or partial payment of actual damages to a victim."); § 31-

9

17-1(A)(2) (" '[A]ctual damages' means all damages which a victim could recover against the defendant in a civil action arising out of the same facts or event[.]").

{17} Defendants argue that, pursuant to *State v. Ellis*, 1995-NMCA-124, ¶ 10, 120 N.M. 709, 905 P.2d 747, it is "well-settled" that "a defendant may be ordered to pay restitution for only the specific offense underlying the conviction." To the extent that Defendants' argument is that, under *Ellis*, the district court was required to limit its restitution order to $2500 each to accord with the larceny charges to which they pleaded guilty, Defendants' view rests on a misunderstanding of *Ellis*.

{18} In *Ellis*, the defendant, an undercover narcotics officer, pleaded guilty to tampering with evidence and embezzlement as a result of having stolen drugs obtained for undercover purchases. *Id.* ¶¶ 1-2. The defendant appealed the district court's order requiring him to pay restitution to his former employer, the Clovis Police Department, in the amount of $7640.22. *Id.* ¶¶ 1, 3. That sum included $2114 paid to the defendant as salary, $1766.22 paid to the defendant as expense money, and $3770 for drug purchases. *Id.* ¶ 3. The defendant argued that restitution should be limited to $211, a sum that represented the actual amount he embezzled from his employer. *Id.*

{19} While this Court agreed with the defendant that, "restitution pursuant to Section 31-17-1 is limited by, and directly related to, . . . [the] crime for which there is a plea of guilty or verdict of guilty," we explained that the pertinent question in assessing

restitution is, "[w]hat damages could the [victim] recover in a civil action against [the d]efendant arising from the . . . criminal charges" to which he pleaded guilty. *Ellis*, 1995-NMCA-124, ¶¶ 10, 15 (internal quotation marks and citation omitted). Pursuant to that analysis, we affirmed the district court's order of restitution against the defendant in *Ellis*. *Id.* ¶ 21. Applying the rationale of *Ellis* to the facts in the present case, supports our decision to affirm the district court's restitution order because evidence presented at the restitution hearing established that the district court ordered restitution in an amount that accorded with the value of the items that Defendants stole from Victim.

{20}     In their final argument, Defendants argue that as to each of them, a $2500 limit on restitution was set at the time they entered into their plea agreements, therefore, "the law of the case" doctrine precluded the district court from ordering restitution in an amount that exceeded the limit. Because, as we have already set forth in the preceding discussion, the record reflects that the matter of restitution was not set at the time Defendants entered their pleas, we do not consider this argument further.

**CONCLUSION**

{21}    We affirm.

{22}    **IT IS SO ORDERED.**


_____
                    **JONATHAN B. SUTIN, Judge**


**WE CONCUR:**


_____
**MICHAEL E. VIGIL, Chief Judge**


_____
**M. MONICA ZAMORA, Judge**